**STATE of Iowa, Appellee,**

v.

**Jeremiah Lynn WALSHIRE, Appellant.**

No. 00–1298.

Supreme Court of Iowa.

Oct. 10, 2001.

Linda Del Gallo, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kristin Mueller, Assistant Attorney General, Denver D. Dillard, County Attorney, and William Croghan, Assistant County Attorney, for appellee.

LARSON, Justice.

Jeremiah Walshire was convicted of driving under suspension, and he appealed, claiming error in the court's denial of his motion to suppress evidence. We affirm.

## I. *Facts and Prior Proceedings.*

The Marion Police Department received an anonymous telephone call about a vehicle with a suspected drunk driver. The call was apparently made on a cellular phone because the caller was following the subject car. The arresting officer testified at the hearing on the defendant's motion

---

* Senior Judge assigned by order pursuant to    Iowa Code section 602.9206 (2001).

to suppress, outlining the sparse facts surrounding his stop of Walshire's vehicle:

> Q. Okay. What about Mr. Walshire first brought him to your attention? A. We had—dispatch reported to me over the radio that a cell phone caller was behind a vehicle on Highway 13 they thought was drunk.
>
> Q. And did they—were you told by dispatch any particulars about the vehicle? A. License plate, make and model of the vehicle.
>
> . . . .
>
> Q. Okay. Were you told why this vehicle was suspected of driving drunk? A. I believe it was the caller stated they were driving in the median.

The officer testified that dispatch reported the caller would not give a name.

The arresting officer located the car and stopped it, solely on the basis of the call; he did not personally observe any behavior that would generate reasonable suspicion for a traffic stop. The defendant was not arrested for drunk driving, but he was charged with driving under suspension in violation of Iowa Code section 321J.21 (1999).

The defendant moved to suppress all evidence obtained as a result of the traffic stop on the ground the officer did not have a reasonable, articulable suspicion to make an investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because the information provided by the anonymous caller was not sufficiently reliable and was not corroborated by independent observations of the officer. The district court overruled Walshire's motion to suppress, relying on *State v. Markus,* 478 N.W.2d 405 (Iowa Ct.App. 1991). On a stipulated record, the court found the defendant guilty of driving under suspension.

## II. *Standard of Review.*

■ Appellate review of claimed violations of constitutional rights under the Fourth Amendment is de novo in light of the totality of the circumstances. *See, e.g., State v. Ortiz,* 618 N.W.2d 556, 558–59 (Iowa 2000).

## III. *The Merits.*

■ To justify a *Terry* stop, an officer must have specific and articulable cause to reasonably believe criminal activity may be afoot. *State v. Heminover,* 619 N.W.2d 353, 357–58 (Iowa 2000). This quantum of evidence necessary to justify a *Terry* stop is often referred to as "reasonable suspicion." On appeal the defendant occasionally discusses principles of "probable cause" rather than "reasonable suspicion," as involved in this case. There is, of course, a substantial difference.

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990).

In *State v. Markus,* the case relied on by the district court, the police received an anonymous tip from a motorist using a cellular phone to report he was following a pickup that "was all over the roadway." 478 N.W.2d at 407. The caller, as in the present case, reported the description of the vehicle, its license number, location, and direction of travel. The officers found the vehicle but made no independent observations as to how it was being operated. They stopped the vehicle and, believing

the driver was intoxicated, arrested him for operating while intoxicated. The district court suppressed the evidence from the stop on the ground the officers had made no observations as to the manner of the vehicle's operation, and the anonymous call alone was insufficient to create reasonable suspicion. *Id.* The court of appeals reversed, holding the totality of the circumstances provided reasonable suspicion for the stop, relying on *Alabama v. White. Markus,* 478 N.W.2d at 408.

In *White* an anonymous caller said Vanessa White would leave a certain apartment at a certain time in a brown Plymouth station wagon with a broken right taillight, that she would go to a certain motel, and that she would be possessing cocaine. Officers were able to corroborate all of the information, aside from the cocaine possession, through personal observation. The Supreme Court held this was sufficient to create reasonable suspicion, based largely on the fact that the anonymous caller's information proved to be an accurate prediction of what the defendant would do, thus suggesting the caller had inside information and bolstering the caller's credibility. *White,* 496 U.S. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310.

The defendant in the present case appears to argue, although it is not clear, that *White* is distinguishable from this case because here predictive information such as in *White* is lacking. He implies that *Markus,* which relied on *White,* was decided in error. According to him, the recent Supreme Court case of *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), controls this case and overrules *Markus* because *J.L.* held that an anonymous call, absent other indicia of reliability, cannot provide reasonable suspicion for a *Terry* stop. *J.L.,* 529 U.S. at 270–71, 120 S.Ct. at 1378–79, 146 L.Ed.2d at 260.

In the present case, if there had been some indication of reliability based on the caller's prediction of the defendant's actions, as in *White,* or if the officers had confirmed for themselves that the driver was driving erratically, there would be a stronger case for reasonable suspicion. Nevertheless, we do not agree that reasonable suspicion necessarily requires an accurate prediction of future events or independent observations by the officer of inculpatory conduct.

In *J.L.* the Supreme Court held that, absent other indicia of reliability, an anonymous telephone call reporting that a young black male, wearing a plaid shirt and standing at a particular bus stop, was carrying a gun did not constitute the reasonable suspicion necessary to justify a *Terry* stop. The Court noted that the reputation of an anonymous informant cannot be assessed under those circumstances, and such an informant cannot be held responsible if the allegations turn out to be false. *J.L.,* 529 U.S. at 270, 120 S.Ct. at 1378, 146 L.Ed.2d at 260. The Court noted "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," and in particular, such a tip would often not show "that the tipster has knowledge of *concealed* criminal activity." *Id.* at 270, 272, 120 S.Ct. at 1378, 1379, 146 L.Ed.2d at 260, 261 (emphasis added). It said, "The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 272, 120 S.Ct. at 1379, 146 L.Ed.2d at 261.

This case is different from *J.L.* in several respects, one of which is particularly important: the information provided here did not concern concealed criminal activity, but rather illegality open to public observation. The tip here demonstrated the tipster's basis of knowledge: the caller

observed the defendant driving in an erratic manner. In fact, in a very similar case of an anonymous cell phone report of a drunken driver, decided after and in light of *J.L.*, it was noted:

> The offense alleged here did not involve a concealed crime—a possessory offense. What was described in the police dispatch to the arresting officer was a *crime in progress*, carried out in public, identifiable and observable by anyone in sight of its commission. Unlike the tip alleged in *White*—that White was carrying narcotics—or in *[Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ]—that the defendant was carrying narcotics and a gun—here a total stranger could have observed defendant's driving abilities. No intimate or confidential relationship was required to support the accuracy of the observation. The caller simply reported a contemporaneous observation of criminal activity taking place in his line of sight.

*State v. Boyea*, 765 A.2d 862, 875 (Vt.2000) (Skoglund, J., concurring), *cert. denied*, —— U.S. ——, 121 S.Ct. 2524, 150 L.Ed.2d 696 (2001). Likewise, in *Markus* our court of appeals stated "[i]ndependent corroboration of the *inculpatory* details of a defendant's tip is not mandatory." 478 N.W.2d at 408. When the officers found the informant to be accurate concerning the vehicle's description and location, they had reason to believe the informant was also accurate as to the alleged criminal activity. *Id.* " 'Because an informant is shown to be right about some things, he is probably also right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity.' " *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 244, 103 S.Ct. 2317, 2335, 76 L.Ed.2d 527, 552 (1983)); *see also State v. Melanson*, 140 N.H. 199, 665 A.2d 338, 340 (1995) (although anonymous caller provided "innocent" details, they were sufficient to support a conclusion the caller had personally observed the vehicle and helped demonstrate the caller's reliability) (citing *State v. Tucker*, 19 Kan.App.2d 920, 878 P.2d 855, 862 (1994)). Although the police in the present case did not verify any inculpatory conduct by the defendant, they verified the caller's description of the defendant's vehicle, its license number, and its general location.

*State v. Williams*, 241 Wis.2d 631, 623 N.W.2d 106 (2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 343, —— L.Ed.2d ——, 2001 WL 687428 (2001)[1] is another case involving anonymous telephone calls, decided after *J.L.*, and relying on the same reasoning. The court in *Williams* said:

> In contrast [to *J.L.*], here, the anonymous tipster explains exactly how she knows about the criminal activity she is reporting: she is observing it. She says, "there's some activity that's going in . . . going around in the back alley of my house. . . . They're selling drugs," and "they [are] giving customers, you know, drugs." She then steps away from the phone momentarily to obtain a description of the vehicle. Quite simply, in contrast to the tipster in *Florida v. J.L.*, the tipster here has made plain that she is an eyewitness.

---

**1.** *Williams* has an interesting procedural record. Initially, the trial court had overruled a motion to suppress the evidence obtained following the anonymous tip. The Wisconsin Court of Appeals reversed. 214 Wis.2d 412, 570 N.W.2d 892 (1997). On review by the Wisconsin Supreme Court, the court of appeals opinion was reversed. 225 Wis.2d 159, 591 N.W.2d 823 (1999). The United States Supreme Court then granted certiorari. The Supreme Court vacated the Wisconsin Supreme Court opinion, without review of the case, and remanded it for a new opinion in view of *J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The Wisconsin Supreme Court examined the case for a second time and again held that the evidence was admissible. *Williams*, 623 N.W.2d at 108.

*Williams,* 623 N.W.2d at 114 (first bracket added).

The Wisconsin court also gave weight to the fact the caller was a citizen informant, stating

> [w]e have recognized the importance of citizen informants and, accordingly, apply a relaxed test of reliability, that "shifts from a question of personal reliability to 'observational' reliability." In particular, we view citizens who purport to have witnessed a crime as reliable, and allow the police to act accordingly, even though other indicia of reliability have not yet been established.

*Id.* at 115 (citations omitted).

In this case the anonymous call came from a citizen informant, defined as one who is a witness to or a victim of a crime. *Bousman v. Iowa Dist. Ct.,* 630 N.W.2d 789, 800 (Iowa 2000). We have recognized a rebuttable presumption that "information imparted by a citizen informant is generally reliable." *State v. Niehaus,* 452 N.W.2d 184, 189 (Iowa 1990).

In *Bousman* we concluded an anonymous tip did not create reasonable grounds to support an order for nontestimonial identification because the tip did not disclose "the means by which the information was obtained," and because it did not establish that the informant was a private citizen. 630 N.W.2d at 800 (quoting Iowa Code § 810.5(4)). In the present case the call disclosed the means by which the information was obtained, *i.e.,* observation of the crime in progress, and thus made clear the caller was a private citizen. *Bousman* must therefore be distinguished.

The majority in the *Boyea* case focused on different grounds in distinguishing the *J.L.* case.

> The Supreme Court in [*J.L.*] also noted the relative *lack* of urgency confronting the investigating officers. While acknowledging that guns are dangerous, the Court analogized the situation to one involving an anonymous tip concerning possession of narcotics. In either case the contraband *could* pose a potential public risk, but in neither is the danger particularly imminent. Thus the Court rejected a rule that would have dispensed with the requirement of reliability "whenever and however" the information involved a gun. *J.L.,* 529 U.S. at 274, 120 S.Ct. at 1380. At the same time, however, the Court carefully limited its holding to the facts, declining to "speculate" about situations involving other types of dangers, *such as a report of a person carrying a bomb. Id.*
>
> In contrast to the report of an individual in possession of a gun, an anonymous report of an erratic or drunk driver on the highway presents a qualitatively different level of danger, and concomitantly greater urgency for prompt action. In the case of a concealed gun, the possession itself might be legal, and the police could, in any event, surreptitiously observe the individual for a reasonable period of time without running the risk of death or injury with every passing moment. An officer in pursuit of a reportedly drunk driver on a freeway does not enjoy such a luxury. *Indeed, a drunk driver is not at all unlike a "bomb," and a mobile one at that.*

*Boyea,* 765 A.2d at 867 (third and fourth emphasis added); *accord State v. Rutzinski,* 241 Wis.2d 729, 623 N.W.2d 516, 526 (2001). The *Boyea* concurrence agreed that the risk of an illegal drug or a concealed weapon going undetected was far

different from the risk posed by "a drunk driver maneuvering a thousand pounds of steel, glass and chrome down a public road." *Boyea*, 765 A.2d at 875 (Skoglund, J., concurring). *But see Stewart v. State*, 22 S.W.3d 646, 649 (Tex.App.2000) (noting that *J.L.* only acknowledged a bombing situation might be different and did not announce such a rule).

The majority in *Boyea* further distinguished *J.L.* by observing that a traffic stop is less intrusive than the pat down considered in the *J.L.* case. *Boyea*, 765 A.2d at 868 ("The police intervention here consisted initially of a brief motor-vehicle stop and questioning, not a hands-on violation of the person. Thus, the liberty interest at stake in this case did not rise to the level which confronted the Court in *J.L.*"). The *Boyea* concurrence noted that the United States Supreme Court, while analyzing the constitutionality of sobriety checkpoints, weighed the intrusion on individual privacy interests against the government interest in preventing drunk driving.

> The Court concluded that the balance favored allowing sobriety checkpoint stops, as the "magnitude of the drunken driving problem" was beyond serious dispute, and the "weight bearing on the other scale—the measure of the intrusion on motorists stopped briefly at sobriety checkpoints—is slight."

*Boyea*, 765 A.2d at 875 (Skoglund, J., concurring) (quoting *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 451, 110 S.Ct. 2481, 2485–86, 110 L.Ed.2d 412, 420–21 (1990)).

We believe the following factors distinguish this case from *J.L.*:

(1) In this case the informant revealed the basis for his knowledge—he was observing a crime in progress, open to public view; (2) in the present case, a serious public hazard allegedly existed that, in the view of the Supreme Court, might call for

a relaxed threshold of reliability; and (3) the intrusion on privacy interests is slight, less than in a pat-down situation.

For the reasons stated, we adhere to the ruling of *Markus* and affirm the denial of the motion to suppress. This disposition makes it unnecessary to address the State's alternative argument based on the "community caretaking" exception to the warrant requirement. *See State v. Moore*, 609 N.W.2d 502, 504 (Iowa 2000).

**AFFIRMED.**