2002 ME 124

**STATE of Maine**

v.

**Thomas LAFOND.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 30, 2002.

Decided: July 31, 2002.

■

Stephanie Anderson, Dist. Atty., Julia Sheridan, Asst. Dist. Atty., Portland, for the State.

William H. Childs, Childs, Rundlett, Fifield, Shumway & Altshuler, LLC, Portland, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] After the denial of his motion to suppress in the District Court (West Bath, *Field, J.*), and the entry of his conditional guilty plea, Thomas Lafond appeals from a judgment of conviction entered in the Superior Court (Cumberland County, *Brennan, J.*) for operating under the influence in violation of 29–A M.R.S.A. § 2411(1) (1996), (Class D).[1] Lafond contends that

---

1. Section 2411(1) provides that a person commits OUI if that person operates a motor

the court erred in denying his motion to suppress because the anonymous tip that motivated the stop was unreliable, which made the stop unlawful under the United States and Maine Constitutions. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] The following facts are not disputed. Officer Joel Bruce on patrol duty in March 2001 received a call at 11:20 p.m. from his dispatcher advising him that the Bath Police Department had received a call from someone reporting "a possible intoxicated driver operating a green Ford Explorer headed towards Brunswick on the Old Bath Road."

[¶ 3] Officer Bruce positioned himself on the Old Bath Road to see if the vehicle came by. While waiting he received another call from his dispatcher to the effect that the vehicle in question was just leaving 48 Theodore Drive—which he knew to be approximately one to two miles down the road from his current position. The call relayed a registration number but "no other information." Bruce then received a transmission from Officer Couture, who had located and was following the vehicle on the Old Bath Road. Bruce stated that Couture "made a comment that his opinion was the vehicle was driving appropriately, but I don't specifically remember it. I ju—I believe he made that comment." Bruce drove five hundred yards down the road from where he was, and backed into Maplewood Manor to wait; two or three minutes after Couture's call he observed two vehicles approaching. When he saw that the lead car was a green Ford Explor-

er he pulled out behind it; the second car behind him was Couture's police cruiser.

[¶ 4] After pulling out behind the Ford, Bruce "noticed that the vehicle swerved to the right and crossed the white fog line. This was a long, flat stretch of road. There was no other vehicles, no other obstructions. I couldn't identify any reason for that vehicle to swerve." Bruce observed that "the two tires were over the line. I'm not sure if they—how far over the line they went." Following further questioning Bruce stated that the two right tires crossed over the line "totally"; the driver "almost immediately . . . pulled back onto the road . . . relatively smooth[ly]." The Ford Explorer was traveling within the speed limit. Upon confirmation of the license plate number Bruce activated his lights to effect a stop.

[¶ 5] Officer Bruce reported that: Lafond was the operator of the vehicle; he smelled of intoxicants and admitted to having consumed one beer; he submitted to field sobriety tests and "performed poorly"; he was arrested; he took an Intoxilyzer breath test and the result was a blood alcohol content of 0.18%. The State filed a complaint against Lafond for operating under the influence, and shortly thereafter Lafond filed a motion to suppress. After the court denied the motion, Lafond entered a conditional guilty plea and filed this appeal.

## II. DISCUSSION

[¶ 6] For an investigatory traffic stop to be constitutionally sound under the Fourth Amendment of the United States Constitution and article I, section 5 of the Maine Constitution,[2] the officer must have,

---

vehicle while "under the influence of intoxicants" or while "having a blood-alcohol of 0.08% or more."

2. The Maine Constitution, article 1, section 5, provides in part:

   The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures . . . .

at the time of the stop, an "articulable suspicion that criminal conduct has taken place, is occurring, or imminently will occur, and the officer's assessment of the existence of specific and articulable facts sufficient to warrant the stop is objectively reasonable in the totality of the circumstances." *State v. Burgess*, 2001 ME 117, ¶ 7, 776 A.2d 1223, 1227 (quoting *State v. Tarvers*, 1998 ME 64, ¶ 3, 709 A.2d 726, 727). While a reasonable and articulable suspicion requires less proof than the "probable cause" standard, the suspicion needs to be based on "more than speculation or an unsubstantiated hunch." *State v. Eklund*, 2000 ME 175, ¶ 6, 760 A.2d 622, 624 (quoting *State v. Buxton*, 687 A.2d 227, 228 (Me.1996)). When the facts leading to the stop are undisputed, as they are here, we assess the officer's suspicion de novo. *Id.* ¶ 5.

■ [¶ 7] Lafond argues that pursuant to *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the stop was illegal; thus, the evidence collected as a result of the stop should have been suppressed. We do not agree. It is not self-evident that *J.L.* is even applicable to a traffic stop, but if it is, the anonymous tip here was sufficiently corroborated to avoid the *J.L.* strictures.

[¶ 8] The United States Supreme Court has examined the constitutionality of using anonymous tips to support a stop in factu-

ally distinct situations. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), involved an anonymous tip alleging possession of cocaine and led to a traffic stop.[3] The Court declared that an anonymous tip can produce reasonable suspicion only if the information relayed in the tip carries sufficient "indicia of reliability." *Id.* at 328, 110 S.Ct. 2412 (quoting *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). Reasonable suspicion can arise from information that is "less reliable" than needed for probable cause, yet still, there must be *some* reliability: "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.* at 330, 110 S.Ct. 2412.

[¶ 9] When law enforcement assesses the reliability of a tip, due weight must be given to the informant's "veracity" and "basis of knowledge." *Id.* at 328, 110 S.Ct. 2412 (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Realistically, though, an anonymous tip alone "seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations" and the truthfulness of anonymous persons

---

ME. CONST. art. 1, § 5. This provision has been interpreted co-extensively with the federal Fourth Amendment, *State v. Gulick*, 2000 ME 170, ¶ 9 n. 3, 759 A.2d 1085, 1087, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .

U.S CONST. amend. IV.

**3.** The Court described the anonymous tip under consideration: a caller told the police that "Vanessa White would be leaving 235–C Lynwood Terrace Apartments at a particular time

in a brown Plymouth station wagon with the right taillight lens broken," that she would be going to "Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case." *White*, 496 U.S. at 327, 110 S.Ct. 2412. The police saw a brown Plymouth station wagon leave the 235–C building and drive towards Dobey's Motel; before the car got there it was stopped. *Id.* The officers located a brown attache case containing marijuana; at the station house they found cocaine in the defendant's purse. *Id.*

supplying information is "by hypothesis largely unknown and unknowable." *Id.* at 329, 110 S.Ct. 2412. Thus, reliability may also be established by "independent corroboration" of the informant's predictions. *Id.* at 332, 110 S.Ct. 2412. Although the Court deemed *White* a "close case," the police were considered justified in using the tip because "significant aspects" of the caller's predictions were verified, providing reason to believe "not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.* at 332, 110 S.Ct. 2412.

[¶ 10] A unanimous Court recently decided in *J.L.*, 529 U.S. at 271, 120 S.Ct. 1375, that an anonymous tip *lacked* "the moderate indicia of reliability present in *White* [because] ... [t]he anonymous call concerning J.L. provided no predictive information and therefore left the police without the means to test the informant's knowledge or credibility." In *J.L.*, an anonymous caller reported that a young black male, wearing a plaid shirt, located at a particular bus stop, was carrying a gun. *Id.* at 268, 120 S.Ct. 1375. The police went to the bus stop, saw three black males, focused on the one wearing a plaid shirt (J.L.) and stopped and frisked him and found a gun in his pocket. *Id.* The officers had no other reason to suspect criminal activity. *Id.* The Court stated that the "reasonableness of official suspicion must be measured by what the officers knew before they conducted their search," and all the police had to use was "the bare report of an unknown, unaccountable informant" who did not explain how he gained knowledge of the gun or that he had "inside information" about J.L. *Id.* at 271, 120 S.Ct. 1375. Concededly,

> [a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person who the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just its tendency to identify a determinate person.

*Id.* at 272, 120 S.Ct. 1375.

■ [¶ 11] Our jurisprudence authorizes the use of anonymous tips in drunk driving cases when the tipster is inferentially reliable, *see State v. Sampson*, 669 A.2d 1326, 1328 (Me.1996) (the tip inferentially identified a Dunkin' Donuts employee as the informant, and the tip contained "specific information which included a description of Sampson's car, its location, the direction in which it was heading, and the license plate number"), or when the officer personally observed the driver drinking earlier in the evening, *State v. Fortin*, 632 A.2d 437, 438 (Me.1993).

[¶ 12] We also sanction reliance on an anonymous tip when there is subsequent corroboration. In *State v. Littlefield*, 677 A.2d 1055, 1056 (Me.1996), the police received a call that a 1979 blue Chevy pickup truck with Maine registration 28230Z was travelling on Route 9 towards Brewer and that the truck "was 'all over the road.'" The officer followed the truck for one tenth of a mile and did not notice any unusual driving; however, the truck put on its blinker and turned into a driveway that did not reflect the address in the registration. *Id.* at 1057. The defendant argued that the mere fact the tip contained concrete statements of time and place as well as a specific description of the truck was not sufficient to justify the stop. *Id.* at 1057. We recognized, however, that elements of the tip were immediately and independently corroborated. *See id.* at 1058. Additionally, the officer had "a rea-

sonable basis for believing that the truck did not belong in that driveway." *Id.* Thus, the "totality of the circumstances" supplied the "indicia of reliability" to render the stop constitutional. *Id.*

[¶ 13] Citing *State v. Caron,* 534 A.2d 978, 979 (Me.1987), Lafond contends his "drift to the right" does not provide the necessary independent corroboration of intoxication. We disagree. The single straddle observed in *Caron,* which we held "did not give rise to an objectively reasonable suspicion that criminal activity was involved," *id.,* is not this case. Here we have a straddle plus an anonymous tip with sufficient specificity that the vehicle could be located.

The entry is:

Judgment affirmed.