The appellant, Dedrick Demond Cottrell, pleaded guilty to possessing a firearm with an altered or removed serial number, a violation of § 13A-11-64, Ala. Code 1975. Cottrell was sentenced to one year and one day in jail; the court suspended the sentence and placed Cottrell on probation for two years. Before entering his guilty plea, Cottrell specifically reserved his right to appeal the circuit court's ruling denying his motion to suppress the gun, which was recovered as a result of a traffic stop.
Cottrell argued in his motion to suppress that the traffic stop was illegal because the stop was made pursuant to an anonymous tip that was not corroborated or verified by the police officer before he stopped Cottrell's vehicle. He asserts that based on the United States Supreme Court's decision in Florida v.J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254
(2000), the results of the illegal stop — the gun — should have been suppressed because the anonymous tip had no indicia of reliability — it was not corroborated.
The circuit court held a hearing on the motion to suppress. At the hearing, Officer Darren Beams of the Tuscaloosa Police Department testified that on March 8, 2003, he was driving his patrol car east-bound on Skyland Boulevard in Tuscaloosa when a driver flagged him down and told him that a blue Chevrolet Lumina automobile was "swerving all over the road." The driver said that he saw all of the vehicle's occupants, three young black males, drinking beer. Officer Beams saw the vehicle the driver was describing as he was speaking to the anonymous motorist, and he initiated a traffic stop. He said that he noticed a lot of "furtive movement" and that it took the vehicle a "little time" to stop. He said that when the three got out of the vehicle he could see half a case of beer stuck in a hole between the backseat and the opening to the trunk. Officer Beams testified that Cottrell was driving the vehicle and that he obtained his consent to search the car. When he opened *Page 737 
the driver's door, Officer Beams said, he saw the handle of a revolver sticking out from under the seat. He could see that the serial number of the gun had been altered. On cross-examination, Officer Beams said that he did not personally observe any illegal activity before the stop and that the sole basis for the stop was the complaint by the anonymous motorist.
The circuit court denied the motion to suppress. Cottrell then moved the court to reconsider its ruling. The circuit court likewise denied that motion. Cottrell then pleaded guilty to violating § 13A-11-64, Ala. Code 1975, and reserved his right to appeal the circuit court's ruling denying his motion to suppress the gun.
This Court's review of a ruling on a motion to suppress when the evidence presented is undisputed is de novo — we indulge no presumption of correctness in the circuit court's findings. See State v. Hill, 690 So.2d 1201
(Ala. 1996).
The United States Supreme Court in Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held that an officer may stop and detain a citizen if he has a "reasonable suspicion" that a crime has been committed or that one is being committed. A totality-of-the-circumstances approach is used when assessing the information relayed to the officer. SeeUnited States v. Cortez, 449 U.S. 411, 101 S.Ct. 690,66 L.Ed.2d 621 (1981). An anonymous tip may provide reasonable suspicion if the tip is reliable. See Alabama v.White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301
(1990).
More recently, in Florida v. J.L., the United States Supreme Court addressed whether an anonymous telephone tip that an individual was at a certain location and was carrying a gun was sufficient to stop the individual and conduct a search. The Supreme Court, holding that the anonymous telephone tip did not establish sufficient reliability to justify the stop, stated:
 "In the instant case, the officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be. assessed and who can be held responsible if her allegations turn out to be fabricated, See Adams v. Williams, 407 U.S. 143, 146-147 (1972), `an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,' Alabama v. White, 496 U.S. [325], at 329 [(1990)].
 ". . . .
 "The tip in the instant case lacked the moderate indicia of reliability present in White and essential to the Court's decision in that case. The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If White was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line."
529 U.S. at 270-71, 120 S.Ct. 1375. Apparently, limiting its holding, the United States Supreme Court further stated: *Page 738 
 "The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk. Nor do we hold that public safety officials in quarters where the reasonable expectation of Fourth Amendment privacy is diminished, such as airports, see Florida v. Rodriguez, 469 U.S. 1 (1984) (per curiam), and schools, See New Jersey v. T.L.O., 469 U.S. 325 (1985), cannot conduct protective searches on the basis of information insufficient to justify searches elsewhere.
 ". . . We speak in today's decision only of cases in which the officer's authority to make the initial stop is at issue. In that context, we hold that an anonymous tip lacking indicia of reliability of the kind contemplated in Adams [v. Williams, 407 U.S. 143 (1972),] and [Alabama v.] White[, 496 U.S. 325 (1990),] does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm."
529 U.S. at 273-74, 120 S.Ct. 1375. Also, Justice Kennedy, in a special concurrence joined by Chief Justice Rehnquist, noted that "there are many indicia of reliability respecting anonymous tips that we have yet to explore in our cases."529 U.S. at 274, 120 S.Ct 1375. Justice Kennedy then said:
 "An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring. This too seems to be different from the tip in the present case. See United States v. Sierra-Hernandez, 581 F.2d 760 (C.A.9 1978)."
529 U.S. at 276, 120 S.Ct. 1375.
The United States Supreme Court's decision in Florida v.J.L. is factually distinguishable from the facts presented in this case. First, in this case the informant did not anonymously telephone the police; instead he flagged down a police officer from his vehicle as the officer was passing in his patrol car. The informant's identity was readily apparent by the license plate on his car, and the informant could have been held accountable for any misinformation he relayed to the police officer. We agree that "a face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false."United States v. Salazar, 945 F.2d 47, 50-51 (2d Cir. 1991). "Information from a citizen who confronts an officer in person to advise that a designated individual present on the scene is committing a specific crime should be given serious attention and great weight by the officer." United Statesv. Sierra-Hernandez, 581 F.2d 760, 763 (9th Cir. 1978).
 "Various federal and state courts have distinguished the government informant . . . from the eyewitness, victim of a crime or a citizen who provides information of a crime. . . . The rationale of these holdings is that the concomitant danger of self-interest does not inure to a victim or witness to a crime as easily as it would to a government informant."
United States v. Unger, 469 F.2d 1283, 1287 n. 4 (7th Cir. 1972). *Page 739 
Justice Rehnquist, writing for the court in Adams v.Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612
(1972), stated:
 "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations — for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime — the subtleties of the hearsay rule should not thwart an appropriate police response."
407 U.S. at 147, 92 S.Ct. 1921. Here, the informant was not "totally anonymous" as was the case in Florida v. J.L.
This informant had a face-to-face encounter with the police officer. "By thus presenting himself to the agent and doing so while driving a car from which his identity might easily be traced, the informant was in a position to be held accountable for his intervention. The reliability of the information was thus increased." United States v. Sierrar-Hernandez,581 F.2d at 763.
Second, unlike Florida v. J.L. the informant here told police that he had seen all three occupants of the car drinking beer and that the car had been "swerving all over the road" — a situation quite different from the situation presented to the court in Florida v. J.L.[1]
Alabama has not had occasion to address the United States Supreme Court's decision in Florida v. J.L. since its release in 2000. However, many other state and federal courts have factually distinguished cases involving anonymous tips concerning drunk drivers. The first federal court to thoroughly discuss the impact of Florida v. J.L. on anonymous tips involving potential drunk drivers was the United States Court of Appeals for the Eighth Circuit in United States v.Wheat, 278 F.3d 722 (8th Cir. 2001). We quote extensively from that opinion and adopt the rationale employed by theWheat Court and the cases cited in that opinion:
 "The question we now face is whether, in light of [Florida v.] J.L., [529 U.S. 266 (2000),] an anonymous tip about the dangerous operation of a vehicle whose innocent details are accurately described may still possess sufficient indicia of reliability to justify an investigatory stop by a law enforcement officer who does not personally observe any erratic driving. Recognizing the complexity of this issue, we answer affirmatively, and hold that under the totality of the circumstances of this case, Officer Samuelson had reasonable suspicion to detain the car in which Wheat was a passenger.
 "In reaching this conclusion, we have been influenced by the reasoning employed by those state courts that have already considered the issue. The Supreme Courts of Vermont, Iowa, and Wisconsin have held that J.L. does not prevent an anonymous tip concerning erratic driving from acquiring sufficient indicia of reliability to justify a Terry [v. Ohio, 392 U.S. 1 (1968),] stop, even when the investigating officer is unable to corroborate that the driver is operating the vehicle recklessly and therefore unlawfully. *Page 740 
 "In the first such decision by a state high court, State v. Boyea, 171 Vt. 401, 765 A.2d 862
(2000), cert. denied, 533 U.S. 917, 121 S.Ct 2524, 150 L.Ed.2d 696 (2001), the Supreme Court of Vermont affirmed by a 3-2 vote the denial of a motion to suppress where the investigating officer's sole initial basis for detaining the motorist was an anonymous tip, relayed by a police dispatcher, describing a `blue-purple Volkswagen Jetta with New York plates, traveling south on 1-89 in between Exits 10 and 11, operating erratically.' Id.
at 863, 868. Although the court admitted that the case was close, see id. at 867 n. 7, it distinguished J.L. on several grounds. First, it stated that the informant's accurate description of the vehicle and correct prediction of its location, just minutes before the stop, gave the tip greater reliability than the bare-bones tip in J.L.
Second, the court observed that `[i]n contrast to the report of an individual in possession of a gun, an anonymous report of an erratic or drunk driver on the highway presents a qualitatively different level of danger, and concomitantly greater urgency for prompt action.' Id. at 867. The court noted that whereas police confronted with a report of a concealed gun could quietly observe the suspect `for a reasonable period of time without running the risk of death or injury with every passing moment[, a]n officer in pursuit of a reportedly drunk driver on a freeway does not enjoy such a luxury.' Id.
Thus, such a driver is not unlike the `bomb' for which, as the Supreme Court suggested in J.L., a laxer standard of reliability may apply. Id. Finally, the court reasoned that the liberty interest implicated by a simple motor vehicle stop was weaker than the `hands-on violation of the person' that occurred in J.L. Id.
at 868.
 "A very similar analysis informed the decision of the Supreme Court of Iowa in State v. Walshire, 634 N.W.2d 625 (Iowa 2001). The court found that because a tip about erratic driving describes not concealed criminal activity, as in J.L., but rather `illegality open to public observation,' it therefore `demonstrated the tipster's basis of knowledge' and its reliability could be demonstrated through corroboration of innocent details. Id. at 627-28. Unlike the unknown informant in J.L., who `neither explained how he knew `about the gun nor supplied any basis for believing he had inside information,' 529 U.S. at 271, 120 S.Ct. 1375, the caller in Walshire made it clear that he or she was a private citizen eyewitness to an ongoing crime. 634 N.W.2d at 629. The court also agreed with the Boyea court that the imminent danger of drunk driving `might call for a relaxed threshold of reliability,' and that the intrusion on privacy interests is slight' in a vehicle stop as compared to a pat-down on a public street. Id. at 630.
 "The Supreme Court of Wisconsin has also upheld an investigatory stop of a vehicle based on an anonymous tip alleging erratic driving, albeit under some-what stronger factual circumstances. In State v. Rutzinski, 241 Wis.2d 729, 623 N.W.2d 516 (2001), the court considered the reliability of the tip provided by an unidentified motorist calling from a cell phone, contemporaneously describing a black pickup truck that was weaving within its lane, variously driving too fast or too slow, and tailgating. Id. at 733, 623 N.W.2d at 519. Although the investigating officer did not personally observe any such erratic driving, id. at 734, 623 N.W.2d at 519, the court affirmed the denial of the motion to suppress, on three grounds. First, the *Page 741 
court found that although the caller was never identified, he or she did indicate during the phone tip that he or she was in the car directly in front of the offending vehicle, and would therefore have been aware of the possibility that the police could have traced his or her identity by recording his or her license plate number. Id. at 747, 623 N.W.2d at 525. Next, the court recognized that the caller explained that `he or she was making personal observations of the [suspect driver's] contemporaneous actions,' unlike the caller in J.L. Id.
at 748, 623 N.W.2d at 526. Finally, like the Boyea court, the court acknowledged that the tip in question suggested that the suspect `posed an imminent threat to the public's safety.' Id.
at 748-49, 623 N.W.2d at 526. The court emphasized that it did not advocate a blanket exception to the reliability requirement for tips concerning alleged drunk driving, but at the same time clearly stated that the `extraordinary danger' of drunk driving meant that any allegation thereof had to be seriously considered in weighing the totality of the circumstances. Id. at 751, 623 N.W.2d at 527.
 "A handful of lower state courts to have considered this issue in light of J.L. have reached a different conclusion, however. In Commonwealth v. Lubiejewski, 49 Mass App.Ct. 212, 729 N.E.2d 288
(2000), a Massachusetts appeals court held that an anonymous cellular phone call claiming that a pickup truck had been driving on the wrong side of the road could not justify an investigatory stop. Id.
at 213-17, 729 N.E.2d at 290-93. Although the trooper had corroborated all the innocent details about the truck, including its license plate number, he had not personally witnessed any erratic driving, and the caller had already told the dispatcher that the truck had returned to the correct side of the road, so `the emergency had ended.' Id. at 215, 729 N.E.2d at 292. In State v. Boyle, 793 So.2d 1281
(La.Ct.App. 2001), a divided Louisiana appeals court held that an anonymous tip that the driver of a particular pick-up truck was intoxicated did not justify a Terry stop of the suspect in his own driveway. Id. at 1284-85. The court focused on the fact that the officers had not witnessed any criminal activity or unusual driving, and on the fact that the stop took place on the suspect's private property. Id. at 1284. In Washington v. State, 740 N.E.2d 1241
(Ind.Ct.App. 2001), an Indiana appeals court reversed the denial of a motion to suppress marijuana seized during an investigatory stop of a vehicle made pursuant to anonymous tip that the driver was possibly drunk, because the officer had not personally observed any dangerous driving during the two miles he followed the car, and had not corroborated any detailed predictions of the suspect's future behavior. Id., at 1243-1246. And in Stewart v. State, 22 S.W.3d 646 (Tex.Ct.App. 2000), a Texas appeals court held that an anonymous tip that a driver had appeared highly intoxicated while entering the vehicle did not justify a stop, because the description of the suspect was so general that the court questioned whether the officer was certain he had stopped the correct suspect, and the officer had not witnessed any erratic driving. Id., at 648-50. However, in State v. Marks, 2000 WL 33298878 (Conn.Super.Ct.Dec.7, 2000), a Connecticut trial court denied a motion to suppress a stop based on an anonymous tip of erratic driving, even though the officer witnessed no unlawful driving and the tipster refused to identify himself, because the tip took the form of a five-minute 9-1-1 call wherein the caller `clearly relay[ed] *Page 742 
his first hand observations as events [we]re unfolding before him,' describing in extensive detail `every erratic move' of the suspect's car. Id. at *5.
 "From these cases, and upon further reflection, we believe the following considerations to be integral to a determination of whether an anonymous tip of erratic driving may justify an investigatory stop. In so doing, we bear in mind the Supreme Court's instruction that `[reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the "totality of the circumstances." `[Alabama v.] White, 496 U.S. [325] at 330, 110 S.Ct. 2412 [(1990)] (quoting United States v. Cortex, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).
 "First, the anonymous tipster must provide a sufficient quantity of information, such as the make and model of the vehicle, its license plate numbers, its location and bearing, and similar innocent details, so that the officer, and the court, may be certain that the vehicle stopped is the same as the one identified by the caller. The time interval between receipt of the tip and location of the suspect vehicle, though going principally to the question of reliability, may also be a factor here. . . .
 "The tip must also contain a sufficient quantity of information to support an inference that the tipster has witnessed an actual traffic violation that compels an immediate stop. A law enforcement officer's mere hunch does not amount to reasonable suspicion, see Terry, 392 U.S. at 27, 88 S.Ct. 1868; Illinois v. Wardlow, 528 U.S. 119, 123-24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); a fortiori, neither does a private citizen's. . . .
 "The second and far more difficult consideration concerns the quality, or degree of reliability, of the information conveyed in an anonymous tip. In J.L., the Court found the anonymous tip unreliable because it `provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility.' 529 U.S. at 271, 120 S.Ct. 1375. In the context of an anonymous tip of erratic driving, however, the first challenge is to identify the predictive element of the tip that must be corroborated. Is it that the vehicle is being driven dangerously? Wholly aside from the public safety considerations discussed infra, this seems too stringent, because a police officer who corroborated the claim of reckless driving would then have not merely reasonable suspicion to justify an investigatory stop, but probable cause to make an arrest. See United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996) ('[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator.'); accord United States v. Neumann, 183 F.3d 753, 755-56 (8th Cir. 1999); see also Iowa Code § 321.277. Thus, police would lose the intermediate step of investigatory stops based on reasonable suspicion. We think that under the proper circumstances Terry stops strike a careful balance between society's interest in crime prevention and the individual citizen's interest in remaining free from wanton government interference, and we are loath to see their use foreclosed in this context.
 ". . . .
 ". . . As the court reasoned in Boyea: "`The offense alleged here did not involve a concealed crime — a possessory offense. What was described in the police dispatch to the arresting officer was a crime in progress, carried *Page 743 
out in public, identifiable and observable by anyone in sight of its commission. Unlike the tip alleged. in White" that White was carrying narcotics". . . here a total stranger could have observed defendant's driving abilities. No intimate or confidential relationship was required to support the accuracy of the observation. The caller simply reported a contemporaneous observation of criminal activity taking place in his line of sight.'
"765 A.2d at 875 (Skoglund, J., concurring) (emphasis in original). See also Walshire, 634 N.W.2d at 627-28
('[T]he information provided here did not concern concealed criminal activity, but rather illegality open to public observation. The tip here demonstrated the tipster's basis of knowledge: the caller observed the defendant driving in an erratic manner.'); Rutzinski. 241 Wis.2d at 748,623 N.W.2d at 526 ('Unlike the caller in J.L., the informant in this case provided the police with verifiable information indicating his or her basis of knowledge. The informant explained that he or she was making personal observations of Rutzinski's contemporaneous actions.'). Cf.United States v. Armstead, 112 F.3d 320, 322 n. 3 (8th Cir. 1997) (rejecting contention that anonymity of airline agent made his or her tip about a drug courier unreliable, as `[t]he exact identity of the airline's agent is unimportant: it is enough that she or he worked for the airline, . . . and would therefore have accurate information').
 ". . . .
 "An erratic and possibly drunk driver poses an imminent threat to public safety. See Rutzinski 241 Wis.2d at 748-51, 623 N.W.2d at 526-27. Of course, arguably so too does a citizen armed with a gun, yet the Supreme Court firmly declined to adopt an automatic firearm exception to the reliability requirement on that basis. J.L., 529 U.S. at 272, 120 S.Ct. 1375. However, there is a critical distinction between gun possession cases and potential drunk driving cases. In the possessory offense cases, law enforcement officers have two less invasive options not available to officers responding to a tip about a drunk driver. First, they may initiate a simple consensual encounter, for which no articulable suspicion is required. See Florida v. Rodriguez, 469 U.S. 1, 5-7, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (per curiam). Needless to say, that is not possible when the suspect is driving a moving vehicle.
 "Alternatively, officers responding to a tip about a possessory violation may quietly observe the suspect for a considerable length of time, watching for other indications of incipient criminality that would give them reasonable suspicion to make an investigatory stop — as, for example, in Terry, where an experienced officer witnessed several men casing a joint. 392 U.S. at 5-7, 88 S.Ct. 1868. By contrast, where an anonymous tip alleges erratic and possibly drunk driving, a responding officer faces a stark choice. As the Boyea court noted, he can intercept the vehicle immediately and ascertain whether its driver is operating under the influence of drugs or alcohol. 765 A.2d at 862. Or he can follow and observe, with three possible outcomes: the suspect drives without incident for several miles; the suspect drifts harmlessly onto the shoulder, providing corroboration of the tip and probable cause for an arrest; or the suspect veers into oncoming traffic, or fails to stop at a light, or otherwise causes a sudden and potentially devastating accident. Id. In contradistinction to J.L., where the suspect was merely standing at the bus stop, in this context the suspect is extremely *Page 744 
mobile, and potentially highly dangerous. See Boyea, 765 A.2d at 867 ('[A] drunk driver is not at all unlike a "bomb," and a mobile one at that.'). Thus, we think that there is a substantial government interest in effecting a stop as quickly as possible.
 "That interest must be balanced against the individual's right to remain free from unreasonable government intrusion. See Terry, 392 U.S. at 20-21, 88 S.Ct. 1868. We readily acknowledge that citizens have a liberty interest in proceeding unmolested along public highways and. that investigatory stops create a substantial intrusion on that interest. See Delaware v. Prouse, 440 U.S. 648, 657, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (noting that vehicular stops interfere with freedom of movement, are inconvenient, consume time, and may create substantial anxiety). At the same time, we think that such stops are considerably less invasive, both physically and psychologically, than the frisk on a public corner that was at issue in J.L. See Boyea, 765 A.2d at 868 (reasoning that the liberty interest implicated by a vehicular stop is weaker than the `hands-on violation of the person' of the public frisk in J.L.); Walshire, 634 N.W.2d at 630. Recognizing the `magnitude of the drunken driving problem,' the Supreme Court has approved the use by law enforcement of brief roadside sobriety checkpoints. See Michigan Dept of State Police v. Sitz, 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). We rather doubt that a like recognition of the dangers of illegal handguns would lead the Court to approve a scheme of randomly placed magnetometers ('metal detectors') on public sidewalks, even in high-crime neighborhoods.
 "After careful consideration of all of the above factors, we find that the initial stop of the vehicle in which Wheat was a passenger was not unreasonable under the totality of the circumstances. An anonymous caller provided an extensive description of a vehicle that, based on his contemporaneous eyewitness observations, he believed was being operated dangerously, and cited specific examples of moving violations. When Officer Samuelson caught up with the vehicle minutes later while it was stopped at an intersection, he corroborated all its innocent details, confirming that it was the one identified by the tipster. Within seconds after the vehicle resumed motion, Officer Samuelson effected an immediate investigatory stop, rather than allow it to proceed and potentially en-danger other vehicles. Under the totality of the circumstances, he had reasonable suspicion to do so, and the stop was valid under the Fourth and Fourteenth Amendments."
United States y. Wheat, 278 F.3d at 729-37 (footnotes omitted). Other states have followed the rationale and holding in Wheat See State v. Scholl, 684 N.W.2d 83
(S.D. 2004) (upheld traffic stop based on anonymous tip not corroborated by police observation); State v. Golotta,178 N.J. 205, 218, 837 A.2d 359, 366 (2003) ("We agree with those courts that have reduced the degree of corroboration necessary to uphold a stop of a motorist suspected of erratic driving in these circumstances.").
As the Supreme Court of New Hampshire noted in State v.Sousa, 151 N.H. 297, 855 A.2d 1284 (2004):
 "Since J.L., a few intermediate state appellate courts have concluded that anonymous tips of drunk or erratic driving are unreliable, requiring police corroboration of the tip's incriminating details. See Washington v. State, 740 N.E.2d 1241, 1246 (Ind.Ct.App. 2000), cert denied, 753 N.E.2d 7 (Ind. 2001); *Page 745 State v. Boyle, 793 So.2d 1281, 1283-85
(La.Ct.App. 2001); Com. v. Lubiejewski, 49 Mass.App.Ct. 212, 729 N.E.2d 288, 291 (2000); Hall v. State, 74 S.W.3d 521, 525-27 (Tex.App. 2002).
 "By contrast, every state court of last resort that has directly addressed the issue has concluded that, in a drunk or erratic driving case, certain tips are sufficiently reliable and detailed, when viewed in the totality of the circumstances, to establish reasonable suspicion. See Bloomingdale v. State, 842 A.2d 1212, 1217-22 (Del. 2004); State v. Prendergast, 103 Hawai'i 451, 83 P.3d 714, 723-24 (2004); State v. Walshire, 634 N.W.2d 625, 630 (Iowa 2001); State v. Crawford, 275 Kan. 492, 67 P.3d 115, 119-20
(2003); State v. Lafond, 802 A.2d 425, 429-30
(Me. 2002); State v. Golotta, 178 N.J. 205, 837 A.2d 359, 366-69 (2003); State v. Scholl, 684 N.W.2d 83, 85-86 (S.D. 2004); [State v.] Boyea, [171 Vt. 401,] 765 A.2d [862] at 868
[(2000)]. The Eighth Circuit Court of Appeals, the only federal appellate court to address the issue, concurs. United States v. Wheat, 278 F.3d 722, 731-34 (8th Cir. 2001), cert. denied, 537 U.S. 850, 123 S.Ct. 194, 154 L.Ed.2d 81 (2002)."
151 N.H. at 301-02, 855 A.2d at 1288. See also Jon A. York,Search and Seizure: Law Enforcement Officers' Ability toConduct Investigative Traffic Stops Based upon an Anonymous TipAlleging Dangerous Driving when the Officers Do Not PersonallyObserve Any Traffic Violations, 34 U.Mem. L.Rev. 173 (2003).
"A motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible." State v. Tucker, 19 Kan.App.2d 920, 923,878 P.2d 855, 861 (1994). "The United States Department of Transportation's National Highway Traffic Safety Administration estimates that alcohol was involved in forty-one percent of fatal Crashes and seven percent of all crashes in 2001." See 34 U.Mem. L.Rev. at 194 n. 125.
It is well documented that drunk drivers pose a real and serious risk to themselves and the public. In the interest of public safety, an officer should be able to stop a driver and determine whether he or she is, indeed, driving while intoxicated. The minimal intrusion caused by such a brief, investigatory stop is slight compared to the potential risk of harm or even death to the public. We now join our sister states of Vermont, Iowa, Wisconsin, South Dakota, New Jersey, New Hampshire, Hawaii, Delaware, and Kansas, and hold that an anonymous tip concerning a potential drunk driver may be sufficiently reliable to justify a Terry stop without independent corroboration by the police.
However, we must assess the reliability of the anonymous tip using the factors discussed in Wheat: the quantity and quality of the information furnished by the informant, the length of time between the informant's tip and police contact with the potential drunk driver, and the informant's basis of knowledge. See Wheat, supra.
In this case, the citizen informant described the make and model of the vehicle, pointed the vehicle out to the police officer — the vehicle was in the officer's sight in traffic ahead of the informant and the police officer — and described the occupants of the vehicle. Officer Beams stopped the vehicle within minutes of receiving the tip. Moreover, the informant told police that he had personally seen all three occupants of the car drinking beer *Page 746 
and that the car had been "swerving all over the road."
Assessing the facts in this case using the totality-of-the-circumstances approach, we hold that the anonymous tip was sufficiently reliable, in itself, to warrant the investigatory stop. Accordingly, the gun seized as a result of that stop was correctly received into evidence.
For these reasons, we affirm Cottrell's conviction for possessing a firearm with an altered serial number.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
[1] State v. Lafond, 802 A.2d 425, 428 (Me. 2002) ("It is not self-evident that J.L. is even applicable to a traffic stop. . . ."). *Page 747