2010 ME 102

**STATE of Maine**

v.

**John E. McDONALD.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 23, 2010.

Decided: Oct. 19, 2010.

Robert C. Andrews, Esq., Portland, ME, for John E. McDonald.

Stephanie Anderson, District Attorney, Angela Cannon, Asst. Dist. Atty., Prosecutorial District No. Two, Portland, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

MEAD, J.

[¶ 1] John E. McDonald appeals from a judgment entered on the Unified Criminal Docket (Cumberland County, *Moskowitz, J.*) following his conditional guilty plea to operating after habitual offender revocation (Class D), 29–A M.R.S. § 2557–A(2)(A) (2009).[1] McDonald argues that the court (*Eggert, J.*) erred in denying his motion to suppress because the tip supporting his traffic stop was not properly corroborated. We affirm the judgment of conviction.

[¶ 2] On July 15, 2009, a deputy sheriff was sitting in uniform in a marked police cruiser in a parking lot at the intersection of Oak Hill and Ossippee Trail West in Standish. A vehicle pulled next to him, and the operator pointed to the vehicle behind it on Ossippee Trail West and told the deputy that that vehicle had been tailgating and attempting to pass him in an unsafe manner. The deputy saw the vehicle that the operator indicated and identified it as a white four-door Dodge Stratus. The deputy did not get the operator's name or the license plate of the Dodge.

[¶ 3] The deputy pulled into the roadway to stop the Dodge. There was a vehicle between them, and the deputy lost sight of the Dodge when it went around a corner. The deputy turned around and saw a white Dodge Stratus, which McDonald was driving, exiting Standish Hardware. The deputy stopped this vehicle and discovered that McDonald's license had been revoked. The deputy testified that McDonald's car was the only white Dodge Stratus that he saw in the area at that time.

[¶ 4] McDonald moved to suppress the evidence obtained as a result of the stop on the ground that the tip did not have independent corroboration of criminal activity, and therefore the deputy did not have a reasonable, articulable suspicion to stop him. *See State v. Vaughan,* 2009 ME 63, ¶ 12, 974 A.2d 930, 934 ("[A] tip—even an anonymous one—may be reliable if the

---

1. The relevant statute provides:

**1. Operating after habitual offender revocation.** A person commits operating after habitual offender revocation if that person:

**A.** Operates a motor vehicle on a public way, as defined in Title 17–A, section 505, subsection 2, when that person's license to operate a motor vehicle has been revoked under this subchapter or former Title 29, chapter 18–A and that person:

(1) Has received written notice of the revocation from the Secretary of State;

(2) Has been orally informed of the revocation by a law enforcement officer;

(3) Has actual knowledge of the revocation; or

(4) Is a person to whom written notice was sent in accordance with section 2482 or former Title 29, section 2241, subsection 4.

. . . .

**2. Penalties.** The following penalties apply.

**A.** A person is guilty of a Class D crime if the person violates subsection 1 and:

(1) The person has not been convicted for operating after revocation under this section or under former Title 29, section 2298 within the previous 10 years; and

(2) The person has not received an OUI conviction within the previous 10 years. The minimum fine for a Class D crime under this paragraph is $500 and the minimum term of imprisonment is 30 days, neither of which may be suspended by the court.

29–A M.R.S. § 2447–A(1), (2) (2009) (footnote omitted).

information is corroborated by the officer."). The court denied the motion, and McDonald entered a conditional guilty plea. The court (*Moskowitz, J.*) sentenced McDonald to thirty days' imprisonment and fined him $500, both of which were stayed pending appeal.

[¶ 5] "We review the denial of a motion to suppress for clear error as to factual findings and de novo as to issues of law," and because the facts are undisputed here, we review the court's ruling de novo. *State v. Donatelli*, 2010 ME 43, ¶ 10, 995 A.2d 238, 241 (quotation marks omitted).

[¶ 6] We recently reiterated the rule that " '[a]n investigatory stop is justified if the officer at the time of the stop has an articulable suspicion that criminal conduct has taken place....' " *Vaughan*, 2009 ME 63, ¶ 10, 974 A.2d at 933 (quoting *State v. Sampson*, 669 A.2d 1326, 1328 (Me.1996)). "[T]he officer's assessment of the existence of specific and articulable facts sufficient to warrant the stop [must be] *objectively reasonable in the totality of the circumstances.*" *Id.* (quotation marks omitted). "Reasonable articulable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, but [t]he suspicion needs to be based on more than speculation or an unsubstantiated hunch." *State v. Burgess*, 2001 ME 117, ¶ 8, 776 A.2d 1223, 1227 (alteration in original) (quotation marks omitted).

[¶ 7] In this case the informant reported a dangerous driver, and the deputy responded to those allegations by investigating further. "The facts supporting an investigatory search need not be based on the officer's personal observations, but can be provided by an informant if the information carries sufficient indicia of reliability." *State v. Cushing*, 602 A.2d 1169, 1170 (Me.1992) (quotation marks omitted).

We have previously held that when an officer makes a traffic stop based on a detailed description of the vehicle and direction of travel and location, "[t]he totality of the circumstances provided the 'indicia of reliability' that the informant had personal knowledge that criminal or hazardous conduct ... had occurred." *State v. Littlefield*, 677 A.2d 1055, 1058 (Me. 1996). Although the other driver did not describe McDonald's car, he clearly indicated to the deputy which car was traveling behind him, so the deputy could observe the car's features, direction of travel, and location.

[¶ 8] Contrary to McDonald's characterization of this case as an anonymous tip, we do not find that the face-to-face encounter between the deputy and the operator of the other vehicle was truly anonymous. Although the deputy did not ask for the operator's name, he could have collected information about the informant, which makes the information more reliable than an anonymous phone call. The fact that the deputy chose not to do so does not give reason to doubt the veracity of the other driver or make the tip less reliable. In a case where the "informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip." *Florida v. J.L.*, 529 U.S. 266, 276, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (Kennedy, J., concurring) (describing a hypothetical situation where an unnamed person driving a car stops to inform a police officer that criminal activity is occurring).

[¶ 9] When a tip has a " 'low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.' " *State v. Lafond*, 2002 ME 124, ¶ 8, 802 A.2d 425, 428 (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). In this case the other driver's

"basis of knowledge" was apparent to the deputy: he was driving in front of McDonald's vehicle and had observed his driving. *Id.* ¶ 9, 802 A.2d at 428. A disinterested "citizen informant" is more likely to be truthful than "an informant from the criminal milieu," who may be concerned with lessening his or her own criminal liability. *State v. Rabon,* 2007 ME 113, ¶ 28, 930 A.2d 268, 278 (quotation marks omitted).

The entry is:

Judgment affirmed.