# United States Court of Appeals
## For the First Circuit

No. 09-1202

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID JACKSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,* Associate Justice,
and Howard, Circuit Judge.

J. Hillary Billings, Assistant Federal Defender, Federal
Defender Office, with whom Eric A. Vos, Assistant Federal Defender,
Federal Defender Office, was on brief for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, United States Attorney, was on brief for appellee.

June 18, 2010

---

*The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**BOUDIN**, <u>Circuit Judge</u>.  This case is before us for the second time following proceedings in the district court on remand ordered in <u>United States</u> v. <u>Jackson</u>, 544 F.3d 351 (1st Cir. 2008). That decision supplies additional background and we confine ourselves to the facts needed to resolve this appeal.  In both appeals, the question is whether evidence challenged by Jackson should have been suppressed.

In July 2004, the police learned that a pistol had been stolen from a home and, questioning the person who had taken it, learned that it had been traded (allegedly for drugs) to a person fitting Jackson's description.  Jackson, the police determined, was on probation from a previous conviction, a condition of which was that his residence was subject to random searches for weapons or alcohol.  Police then located Jackson at the apartment of Pamela Belanger, where Jackson was staying.

When Belanger answered the door, the police could see Jackson behind her and asked him to step out into the hallway.  The police described to Jackson the nature of their investigation and the evidence they had and asked about his involvement, to which Jackson replied that he might know where the gun was and could retrieve it in one or two hours.  Declining this offer, the police obtained Belanger's written consent to search the apartment and announced this fact to Jackson, who then revealed that the gun was hidden in a cereal box in the refrigerator.

The police searched the refrigerator, found two guns, and arrested Jackson, and brought him to the police station. There the police read him his Miranda rights and obtained verbal and written waivers from him. Jackson admitted he had acquired the gun but said that he had paid with cash, and not drugs, and was unaware that the gun was stolen. He was thereafter indicted for being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(e) (2006), and moved to suppress (1) his statements made in the apartment, (2) the guns, and (3) his police station admissions.

After suppression was denied, Jackson entered a plea of guilty conditional on his right to challenge on appeal the denial of his suppression motion. Fed. R. Crim. P. 11(a)(2). On appeal, we vacated the conviction and remanded, (1) holding that Jackson's admissions in the apartment were obtained by interrogation without a Miranda warning while Jackson was effectively in custody and had to be suppressed; (2) sustaining the district court's refusal to suppress the guns themselves; and (3) leaving open for the remand the question whether the police station statements had to be suppressed. Jackson, 544 F.3d at 360-61.

On remand, United States v. Jackson, 595 F. Supp. 2d 150 (D. Me. 2009), the district court conducted further proceedings and concluded that the statements made in the apartment were not the product of actual coercion, that the guns could not be suppressed as the fruits of coercive questioning and that the statements at

-3-

the police station were sufficiently independent of the earlier apartment questioning that they too were admissible. Id. at 154-55. Jackson again entered a guilty plea conditional on his right to appeal these new rulings. His second appeal is now before us.

On denials of a motion to suppress, review of the district court's factual findings is for clear error and legal rulings are reviewed de novo, United States v. Materas, 483 F.3d 27, 32 (1st Cir. 2007), but we may accord some deference on "mixed" questions (general standards applied to particular facts), In re Extradition of Howard, 996 F.2d 1320, 1328 (1st Cir. 1993). The apartment interrogation and the guns are related, and we consider them first.

Jackson's admissions at the apartment remain inadmissible evidence under our earlier decision based on the Miranda violation, but Jackson's claim here is that they were also "coerced" under the constitutional standards that long predated Miranda. See Dickerson v. United States, 530 U.S. 428, 433-34 (2000). This matters because such coercion would render the guns themselves subject to suppression as "fruit of the poisonous tree," Wong Sun v. United States, 371 U.S. 471, 487-88 (1963); United States v. Byram, 145 F.3d 405, 409 (1st Cir. 1998), subject to possible exceptions.[1]

---

[1]These exceptions include "inevitable discovery," Nix v. Williams, 467 U.S. 431, 444 (1984), and "independent source," id. at 443-44. There is also a separate public safety exception to the requirement of Miranda warning, New York v. Quarles, 467 U.S. 649, 656 (1984), but it was not applicable here. See Jackson, 544 F.3d

-4-

For <u>Miranda</u> violations that do not involve actual coercion, the fruits doctrine is much attenuated and does not assist Jackson for reasons explained in our earlier opinion. <u>Jackson</u>, 544 F.3d at 360-61.

Coercion sufficient to render statements inadmissible is not limited to brutality. Psychological duress, threats, unduly prolonged interrogation and many other circumstances, singly or in combination, may suffice. 2 LaFave et al., <u>Criminal Procedure</u> § 6.2(c), at 616-46 (3d ed. 2007) (collecting decisions). In close cases, detailed examination may be critical--<u>e.g.</u>, conditions of detention, duration, exchanges between the police and the suspect, <u>Arizona</u> v. <u>Fulminante</u>, 499 U.S. 279, 285-87 (1991)--but as to coercion, this case is not close.

The district court found, and Jackson does not argue otherwise, that there was "no evidence of threats of violence or serious retaliation by the officers" or prolonged interrogation at the apartment. <u>Jackson</u>, 595 F. Supp. 2d at 154; <u>see</u> <u>Byram</u>, 145 F.3d at 408. The police also testified that Jackson's demeanor at the apartment was "nervous" but that he was also "joking" and "conversational." Finally, Jackson, with previous experience with the police, was hardly an "uninitiated novice." <u>United States</u> v. <u>Cruz Jimenez</u>, 894 F.2d 1, 8 (1st Cir. 1990).

---

at 360 n.9.

There were a lot of police officers present and a suggestion that cooperation might induce leniency, but neither amounts to coercion. United States v. Genao, 281 F.3d 305, 310 (1st Cir.) (presence of officers), cert. denied, 537 U.S. 901 (2002); United States v. Baldacchino, 762 F.2d 170, 179 (1st Cir. 1985) (promise to communicate cooperation to the prosecutor). Jackson's will was not "overborne in such a way as to render his confession the product of coercion," Fulminante, 499 U.S. at 288, so the guns were not suppressible as the fruits of coercive interrogation.

The statements at the police station are more debatable. The formal warnings called for by Miranda were provided, but one might easily argue that a defendant in Jackson's position may feel boxed in by his prior incriminating statements. If the fruits doctrine were applied with rigor, as it tends to be in cases of physical coercion, such a defendant might colorably urge that the warnings came too late to be useful. Byram, 145 F.3d at 409.

For reasons of history, precedent and policy, Miranda violations have not been treated as creating such an automatic taint. In Oregon v. Elstad, the precedent most helpful to the government, the Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings," at least where the initial statement

was not obtained through "actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will." 470 U.S. 298, 309, 318 (1985).

Then, in Missouri v. Seibert, the police employed a deliberate practice of obtaining a confession first without a Miranda warning; administering the warning; and then re-eliciting the confession using the prior inadmissible confession as a lever. 542 U.S. 600, 605 (2004). The plurality opinion held that the delayed Miranda warning was ineffective under such circumstances and thus that the later statement was inadmissible. Seibert, 542 U.S. at 611-14 (Souter, J.); id. at 621-22 (Kennedy, J., concurring).

Justice Kennedy, who provided the fifth vote for the judgment, supported only a narrower rule in which use of "the deliberate two-step strategy" created a presumptive taint, Seibert, 542 U.S. at 622 (Kennedy, J., concurring); in all other cases, Justice Kennedy urged, the rule of Elstad should still apply. Id. Some circuits have since interpreted Justice Kennedy's necessary vote as limiting the reach of Seibert.[2] Under his test, Jackson would lose; there was no deliberate two-step strategy here, cf.

_____

[2]United States v. Williams, 435 F.3d 1148, 1157-58 (9th Cir. 2006); United States v. Kiam, 432 F.3d 524, 532 (3d Cir.), cert. denied, 546 U.S. 1223 (2006); United States v. Stewart, 388 F.3d 1079, 1090 (7th Cir. 2004); 2 LaFave, supra, § 6.8(b), at 803-04.

-7-

<u>Seibert</u>, 542 U.S. at 616 (describing two-step tactic), and admission of Jackson's later statements would not violate <u>Elstad</u>.

However, the result is the same under the more flexible and searching plurality opinion. See <u>Seibert</u>, 542 U.S. at 615-17 (Souter, J.). At the apartment, the police doubtless were hoping to discover the whereabouts of the gun as swiftly as possible with Jackson's help and without an arrest or formal warnings that might chill such cooperation. But whether the police understood this to be an interrogation requiring <u>Miranda</u> is open to doubt and the scene is some distance from the admitted pre-planned, systematic and ultimately successful effort to undermine the <u>Miranda</u> warnings that troubled the <u>Seibert</u> plurality. <u>Id.</u> at 616.

The facts in <u>Seibert</u> were telling: having been awakened at 3 a.m., Seibert was taken to the police station and systematically interrogated for 30 to 40 minutes without <u>Miranda</u> warnings about her role in a terrible crime resulting in a young teenager's death. <u>Seibert</u>, 542 U.S. at 604-05. After she made a crucial admission, she was given a break, <u>Miranda</u> warnings were administered, and Seibert was immediately confronted with her pre-warning statements in order to extract the more elaborate conforming admissions. <u>Id.</u> at 605.

By contrast, in this case we have sporadic conversations held in the hallway, without a formal arrest, in which the main focus is the location of a gun. Jackson revealed the location of

the gun, only after but almost immediately upon being told that the apartment was about to be searched. Thereafter he was taken to the police station, given <u>Miranda</u> warnings and questioned. Whether there was even an interrogation under <u>Miranda</u> was plausibly debated on the first appeal. Formal questioning occurred only at the station after the arrest. So this was not the same pre-planned "two spates of integrated and proximately conducted questioning" that were involved in <u>Seibert</u>, 542 U.S. at 614.

Similarly, the use of the statement at the apartment as a deliberate lever to extract further information is less apparent in this case than in <u>Seibert</u>. The apartment questioning was intermittent and aimed primarily at securing the weapon; a break and a change of scene occurred between the seizure of the gun and the later interrogation; and, having given Jackson clear <u>Miranda</u> warnings at the station, there is no indication that the police sought to use his prior admission as a lever to overcome an inclination Jackson might have had to remain silent.

This case is part way between <u>Elstad</u> and <u>Seibert</u>. Under Justice Kennedy's test, the lack of any pre-planned evasion of <u>Miranda</u> defeats Jackson's claim; under the plurality decision's fact sensitive approach, the most egregious elements of <u>Seibert</u> are absent (<u>e.g.</u>, the planned tactic, the systematic initial interrogation, the deliberate use of the initial statements to

-9-

secure the later ones).  The district court's judgment was neither unreasonable nor clear error.

Affirmed.