2011 ME 47

**STATE of Maine**

v.

**Christopher J. DODGE.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2011.

Decided: April 14, 2011.

Eric J. Walker, Dep. Dist. Atty. (orally), Waldo County Courthouse, Belfast, ME, for the State of Maine.

Christopher K. MacLean, Esq. (orally), Elliott & MacLean, LLP, Camden, ME, for Christopher J. Dodge.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] The State of Maine, upon written approval from the Attorney General, *see* 15 M.R.S. § 2115–A (2010); M.R.App. P. 21(b), appeals from an order of the Superior Court (Waldo County, *Hjelm, J.*), suppressing statements regarding criminal drug activity that Christopher J. Dodge made to a Maine State Police detective. These statements resulted in Dodge being charged with aggravated furnishing of scheduled drugs (Class C), 17–A M.R.S. § 1105–C(1)(A)(4) (2010). The State argues that the court should not have granted Dodge's motion to suppress evidence because Dodge was not in custody when he made the statements to the police and because his statements were voluntary. We affirm in part and vacate in part.

## I. BACKGROUND

[¶ 2] The facts are drawn from an audio recording of an interview between a Maine State Police detective and Dodge, a written transcript of that interview, and the brief testimony of the detective during the hearing conducted by the suppression court.

[¶ 3] On September 11, 2009, a Maine State Police detective drove to Dodge's residence in Waldoboro to investigate allegations of Dodge's possible criminal activity, including an allegation that Dodge had furnished drugs to his then sixteen-year-old sister-in-law. The detective drove his unmarked police cruiser to Dodge's residence, asked to speak with Dodge in his cruiser, and conducted a recorded interview with Dodge that lasted approximately one and one-half hours. Dodge was not aware that he was being recorded.

[¶ 4] The detective began the interview by stating that Dodge was not under arrest, that the cruiser's doors were not locked, and that Dodge could "get out any time" that he wanted.[1] Roughly twelve and a half minutes into the interview, the detective questioned Dodge about the sister-in-law's alleged drug use:

Detective: No? [Did she] cause any more problems besides the drinking? Does she do any drugs?

Mr. Dodge: I don't think so, no—I mean, not openly around that I know of, but—

Detective: Smoke pot or cocaine or heroin, anything like that?

Mr. Dodge: I know that she smoked a little pot.

Detective: How do you know that?

Mr. Dodge: Between you and I—

Detective: Yeah.

Mr. Dodge:—because I smoked a little pot.

Detective: Okay.

Mr. Dodge: But I shouldn't—I don't know if I should tell you that. That jeopardizes my job. I mean, I got to be a little careful with that. But I will say yeah, I have now and then. And I know that she has. And I know that some of her friends that she hangs out with do, so I do believe there was some of that going on, but that wasn't something that was done around here in front of anybody or anything like that.

---

1. The detective also asked Dodge to put his seatbelt on to silence the car's sensor, but the detective testified that Dodge did not comply.

Detective: Yeah. Well, before you go too far, Chris, as far as—I'm not saying you're going too far, but I've done a thorough investigation and, you know, the reason I'm here is the truth, okay. And this is an investigation that's going to go forward. It's going to go to my bosses. It's going to go to other people, okay, as far as district attorney's office, other agencies. I'm here for the truth, and you're starting to tell me the truth. So I just don't want you to know that anything that's said is between you and I because that's not the case.

Mr. Dodge: Okay.

Detective: Okay? Fair enough?

Mr. Dodge: Yes.

Detective: So just (indiscernible) that. And I've done an investigation here, and I know the truth, and I want the truth from you.

Mr. Dodge: Okay.

Detective: Okay. So there's no secrets here.

Mr. Dodge: No. I understand that.

[¶ 5] Roughly six minutes thereafter, Dodge again asked the detective if he could make a statement "between you and I," to which the detective responded, "Yeah. Like I said, there's nothing between you and I here." Dodge then stated, "I don't care" and "I'm just saying this." Throughout the remainder of the interview, Dodge made numerous statements that he personally used marijuana and furnished marijuana to his sister-in-law.

[¶ 6] Dodge was charged and later indicted with one count of aggravated furnishing of scheduled drugs (Class C), 17–A M.R.S. § 1105–C(1)(A)(4). Dodge moved to suppress evidence obtained from the interview with the detective on the ground that the detective had misled Dodge concerning the confidential nature of his statements.

[¶ 7] The court conducted a hearing regarding the voluntariness of Dodge's statements[2] at which both a CD recording and a transcript of the interview with Dodge were admitted. The detective also testified. After identifying the burden of proof and addressing the key components of the interaction between Dodge and the detective, as set out above, the court found that Dodge "acknowledged that he understood" the detective's clarification regarding confidentiality and the premise that there were "no secrets here." The court then framed the critical question:

The remaining question is whether all of the defendant's statements became involuntary, even after [the detective] told him that his statements would be disclosed to other investigators, prosecutors and representatives of other agencies, and even after the defendant acknowledged that he understood this.

[¶ 8] In addressing the law on point, the court cited State v. McConkie, 2000 ME 158, ¶ 10, 755 A.2d 1075, 1078,[3] and concluded that the initial affirmative response to Dodge's "Between you and I?" could not be overcome by the detective's detailed and consistent reminders that

---

**2.** Dodge initially cited to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in his motion to suppress evidence, but he argued at the suppression hearing only that his statements were involuntary.

**3.** There are subsequent civil rulings related to McConkie's criminal case, but they are not relevant to this appeal. *See McConkie v. Nichols*, 2005 WL 757599, 2005 U.S. Dist. LEXIS 6146 (D.Me. Mar. 29, 2005), *affirmed by* 2005 WL 1588990, 2005 U.S. Dist. LEXIS 13475 (D.Me. July 1, 2005), *on reconsideration affirmed in part and vacated in part by* 392 F.Supp.2d 1 (D.Me.2005), *affirmed by* 446 F.3d 258 (1st Cir.2006).

nothing was secret or confidential. Although the court found as fact that the detective's conduct had been less egregious than the conduct involved in *McConkie*, the court relied on *McConkie* in concluding that, once the detective uttered the initial "Yeah," all statements thereafter had to be declared involuntary. The court ultimately determined that the detective's subsequent clarifications regarding confidentiality could not cure the initial faulty assurance and that the State had not shown that Dodge's disclosures "were free of the taint created by the initial inducement."

[¶ 9] Accordingly, the court granted Dodge's motion to suppress all statements that Dodge made to the detective after the detective's one-word response to Dodge's "Between you and I" question. Upon approval of the Attorney General, *see* 15 M.R.S. § 2115–A; M.R.App. P. 21(b), the State appealed.

## II. DISCUSSION

[¶ 10] "We review the denial of a motion to suppress for clear error as to factual findings and de novo as to issues of law." *State v. McDonald*, 2010 ME 102, ¶ 5, 6 A.3d 283, 285 (quotation marks omitted). Because the facts here are not in dispute, we review the motion court's application of the law to those facts de novo. *Id.* Based on the undisputed facts regarding the detective's actions during the noncustodial interrogation, we must determine whether Dodge's statements were voluntary,[4] as a matter of law, when the detec-

tive provided a one-word response to Dodge's question regarding confidentiality, quickly corrected his brief misstatement, and ascertained from Dodge that Dodge understood that nothing he said would remain confidential.

[¶ 11] The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Maine Constitution also guarantees that "[t]he accused shall not be compelled to furnish or give evidence against himself or herself." Me. Const. art. I, § 6. Consistent with the protection of these rights, it is a fundamental principle of due process that an accused's confession must be voluntary in order for it to be admitted against the accused at trial. *State v. Mikulewicz*, 462 A.2d 497, 500 (Me.1983); *see* U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law. . . ."); U.S. Const. amend. XIV, § 1 ("[n]or shall any State deprive any person of life, liberty, or property, without due process of law. . . ."); Me. Const. art. I, § 6–A ("No person shall be deprived of life, liberty or property without due process of law. . . .").

[¶ 12] If a criminal defendant challenges the voluntariness of a confession, a court must determine if the confession resulted from the "free choice of a rational mind," was "not a product of coercive police conduct," and "if under all of the circumstances its admission would be fundamentally fair."[5] *Mikulewicz*, 462

---

4. The State had "the burden of proving voluntariness beyond a reasonable doubt." *State v. Lavoie*, 2010 ME 76, ¶ 18, 1 A.3d 408, 413 (quotation marks omitted).

5. With regard to the purposes served by the voluntariness requirement, we have stated that "the voluntariness requirement gives effect to three overlapping but conceptually dis-

tinct values: (1) it discourages objectionable police practices; (2) it protects the mental freedom of the individual; and (3) it preserves a quality of fundamental fairness in the criminal justice system." *State v. Mikulewicz*, 462 A.2d 497, 500 (Me.1983); *see State v. Sawyer*, 2001 ME 88, ¶ 8, 772 A.2d 1173, 1176.

A.2d at 501; *see State v. Poblete*, 2010 ME 37, ¶ 24, 993 A.2d 1104, 1109–10; *State v. Coombs*, 1998 ME 1, ¶ 10, 704 A.2d 387, 390–91. This assessment of voluntariness is based on the totality of the circumstances, and includes

> both external and internal factors, such as: the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct.

*State v. Sawyer*, 2001 ME 88, ¶ 9, 772 A.2d 1173, 1176. For instance, statements made in response to threats, *see Coombs*, 1998 ME 1, ¶ 12, 704 A.2d at 391, or in response to police promises of leniency, *see State v. McCarthy*, 2003 ME 40, ¶¶ 12–13, 819 A.2d 335, 340, may be determined to be involuntary.

[¶ 13] With these standards in mind, we must determine whether, based on the totality of circumstances, Dodge's statements were voluntary. *See Mikulewicz*, 462 A.2d at 501. Dodge does not argue that the detective threatened violence against him or that the detective offered him any promises of leniency in return for speaking. *See McCarthy*, 2003 ME 40, ¶¶ 12–13, 819 A.2d at 340. He does contend that the detective made false promises of confidentiality.[6] We therefore assess the detective's conduct to determine whether Dodge's statements constituted "a product of coercive police conduct" and whether the admission of Dodge's statements in the circumstances of this case "would be fundamentally fair." *Mikulew-*

icz, 462 A.2d at 501. In making this determination, we first will address whether the detective misled Dodge about his rights by answering, "Yeah," when Dodge asked whether the conversation would be kept between the detective and Dodge. We then will determine whether any taint created by such a misrepresentation could be remedied by the detective's prompt correction of his assurance that the conversation would remain private.

### A. Misleading Conduct

[¶ 14] An individual's statements may be declared to be involuntary if the police mislead the individual during an interrogation as to that individual's constitutionally protected right against self-incrimination. *See McConkie*, 2000 ME 158, ¶ 10, 755 A.2d at 1078. In *McConkie*, we held that when an individual makes incriminating statements in response to explicit and false police assurances of confidentiality, those statements are deemed not voluntary and must be suppressed. *Id.* ¶ 11, 755 A.2d at 1078–79. In that case, during a noncustodial interrogation about alleged unlawful sexual contact, a police detective affirmatively "told McConkie that any information he provided during the interview would 'stay[ ] confidential.'" *Id.* ¶ 4, 755 A.2d at 1077 (alteration in original). The detective also stated that the allegations "were really not such a big deal" and that "[McConkie was] going to go back home [that day] and that [was] going to be it." *Id.* ¶ 3, 755 A.2d at 1077 (alteration in original). The detective allowed McConkie to believe, throughout the interview, that his statements were confidential, and the detective made no effort to correct the false impression. *Id.* ¶ 4, 755 A.2d at 1077.

[¶ 15] We concluded that McConkie's statements to the police should have been

---

6. Dodge does not argue that any physical or mental health impairment compromised his ability to decide to speak to the detective. *See*

*Mikulewicz*, 462 A.2d at 501; *Sawyer*, 2001 ME 88, ¶ 9, 772 A.2d at 1176.

suppressed because, although McConkie was not in custody and was not entitled to a *Miranda* warning, *see Miranda v. Ariz.*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the detective "was nonetheless not at liberty to affirmatively mislead McConkie as to his constitutionally protected right against self-incrimination." *McConkie*, 2000 ME 158, ¶ 10, 755 A.2d at 1078. We refused to "condone affirmative conduct by a state actor attempting to mislead a suspect regarding his constitutionally protected right to remain silent and the consequences of speaking," and "conclude[d] that the admission at trial of the statements derived as a result of that conduct caused McConkie's trial to be fundamentally unfair" and a violation of due process.[7] *Id.* ¶ 11, 755 A.2d at 1079.

[¶ 16] Here, the detective was similarly not at liberty to mislead Dodge regarding confidentiality. *See id.; Poblete*, 2010 ME 37, ¶ 24, 993 A.2d at 1110; *Sawyer*, 2001 ME 88, ¶ 9, 772 A.2d at 1176. Therefore, the statements Dodge made after the initial brief assurance of confidentiality but before the correction of that misimpression must be suppressed, and we affirm the court's order suppressing those statements. *See McConkie*, 2000 ME 158, ¶ 11, 755 A.2d at 1078–79.

B. Remedial Conduct

[¶ 17] The remaining question, then, is whether the detective effectively

remedied any constitutional infirmity by promptly correcting himself. Dodge was made aware of the nonprivate nature of the conversation through the detective's immediate and complete explanation. Indeed, Dodge acknowledged that he understood their conversation would not be kept private. Although the trial court acknowledged the thoroughness of the detective's warning, it concluded nonetheless that any statements made after the initial misstatement were not "free of the taint created by the initial inducement." Accordingly, we consider whether the detective's attempt to remedy any misimpression of confidentiality effectively cured the taint created by the detective's earlier misstatement.

[¶ 18] A false police assurance of confidentiality in a noncustodial setting may result in suppression if not promptly remedied. *See McConkie*, 2000 ME 158, ¶ 11, 755 A.2d at 1078–79; *see also United States v. Walton*, 10 F.3d 1024, 1027, 1030 (3d Cir.1993) (holding that an individual's statements were involuntary in a noncustodial setting when a police officer familiar with the defendant told him that he could speak "off the cuff" and where the police misled the defendant concerning confidentiality). Neither we nor other jurisdictions have adopted a bright line rule of suppression when, after an indication of confidentiality, the police

---

7. United States Supreme Court precedent supports our reasoning in *McConkie*. *See Dickerson v. United States*, 530 U.S. 428, 432–33, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (outlining "two constitutional bases for the requirement that a confession must be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment," and stating that, although the focus of the inquiry has shifted to custodial police interrogations after *Miranda*, due process jurisprudence continues to require exclu-

sion of involuntary confessions); *Beckwith v. United States*, 425 U.S. 341, 347–48, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (recognizing "that noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where 'the behavior of . . . law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined' ") (quoting *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961)).

promptly and thoroughly remedy that false assurance of confidentiality, and we have not foreclosed the possibility that the police may remedy such an inaccurate assurance. *See McConkie*, 2000 ME 158, ¶ 11, 755 A.2d at 1078–79; *cf. United States v. Conley*, 859 F.Supp. 830, 837 (W.D.Pa.1994) (stating, in the context of a noncustodial interrogation, that "[o]nce coercion infects the dynamic of the investigative process, the process is tainted until the circumstances have evolved in such a manner as to dissipate or attenuate the taint of the coercion").[8]

[¶ 19] In the matter before us, there was no evidence of deliberate police conduct designed to mislead Dodge regarding his constitutionally protected right against self-incrimination. Rather, there was affirmative police conduct to quickly remedy any misimpression following the detective's one-word response to Dodge's question. At the point of the detective's clarification, Dodge had not admitted to criminal conduct, had made only a brief statement regarding his personal use of marijuana,

and had not in any way signaled that he had supplied his underage sister-in-law with drugs. *See* 22 M.R.S. § 2383(1)(A) (2009) (establishing that possession of a useable amount of marijuana is a civil violation).[9] Moreover, the court confirmed that Dodge responded to the detective's clarification that there were "no secrets" between them by stating, "I understand that." Dodge even told the detective, "I don't care," when reminded again that his statements were not confidential. Thus, as would be true regarding *Miranda* warnings in a custodial setting, the detective's initial misstatement in this noncustodial setting did not render inadmissible Dodge's later statements.

[¶ 20] Perhaps most importantly, the purposes of suppression would not be served by excluding Dodge's statements made after he was aware that his conversation would not be kept private. Suppression would not vindicate Dodge's mental freedom because Dodge explicitly stated that he knew and accepted that his

---

**8.** The development of the jurisprudence governing *Miranda* violations similarly addresses whether initial misstatements by a law enforcement officer are sufficient to taint later statements, thereby requiring suppression. "*Miranda* violations have not been treated as creating ... an automatic taint." *United States v. Jackson*, 608 F.3d 100, 103 (1st Cir. 2010); *see also Oregon v. Elstad*, 470 U.S. 298, 314, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (holding that in the absence of police coercion, "[a] subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement"); *State v. Smith*, 675 A.2d 93, 97 (Me. 1996) (holding that a failure to give a *Miranda* warning during an initial custodial interrogation did not render inadmissible any statements that were voluntarily made after a warning was later given). However, when the police delay giving a *Miranda* warning until after confession in a strategic effort to coerce the confession, the police misconduct

may sufficiently taint all of the individual's statements, notwithstanding later warnings, and suppression is required. *See Missouri v. Seibert*, 542 U.S. 600, 617, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (holding, in a plurality opinion, that a confession obtained through a two-step "questions first" interrogation technique, whereby the police deliberately questioned a defendant in custody until that defendant confessed, followed by a *Miranda* warning and reiteration of the confession, was inadmissible because the police strategy undermined the effectiveness of the *Miranda* warning); *see also United States v. Verdugo*, 617 F.3d 565, 575 (1st Cir.2010) (declining "to determine whether *Seibert's* reach is limited to cases in which the police set out to subvert a suspect's *Miranda* rights"); *Jackson*, 608 F.3d at 104 (same).

**9.** Title 22 M.R.S. § 2383(1)(A) has since been amended. P.L.2009, ch. 652, § B–6 (effective April 14, 2010) (codified at 22 M.R.S. § 2383(1)(A) (2010)).

statements to the detective were not confidential. *See Mikulewicz*, 462 A.2d at 500. Further, suppression would not "discourage[ ] objectionable police practices," *id.*, because the detective did a good job of rectifying the initial assurance of confidentiality. In these circumstances, we conclude that the admission of Dodge's statements made after the detective remedied his initial mistaken representation would not undermine "a quality of fundamental fairness in the criminal justice system." *Id.*

[¶ 21] Accordingly, we conclude, contrary to the trial court, that the initial police misstatement did not taint the remaining confession.

The entry is:

Order suppressing statements made before the detective's correction affirmed. Order suppressing statements made following the detective's clarification vacated. Remanded to the Superior Court for further proceedings.