STATE OF MAINE                    UNIFIED CRIMINAL COURT
AROOSTOOK, ss                     DOCKET NO.  AROCD-CR-2020-00352


STATE OF MAINE            )
                         )
        v.               )        ORDER ON MOTION TO SUPPRESS
                         )
JAMIE S. GAGNE           )


Hearing on the Defendant's motion to suppress was held on July 26, 2022.  The Defendant was present and represented by Hunter Tzovarras, Esq.  The State was represented by Assistant District Attorney Christiana Rein.

The Defendant was indicted by the Aroostook County Grand Jury on October 8, 2020, with the following charges:  Count 1 - Gross Sexual Assault, Class A, 17-A M.R.S.A. §253(1)(C); Count 2 – Unlawful Sexual Contact, Class A, 17-A M.R.S.A. §255-A(1)(F-1); and Count 3 – Unlawful Sexual Contact, Class B, 17-A M.R.S.A. §255-A(1)(E-1).

Through his original motion to suppress dated December 8, 2021, Defendant sought to suppress any statements made by him to a law enforcement officer on July 22, 2020 at the Presque Isle Police Department and on July 27, 2020 at the Aroostook County Jail because they were not voluntarily made.

At hearing, the State presented the testimony of Tiffany Stewart, a former Fort Fairfield Police Officer (hereinafter "Stewart"), and Edward Ainsworth, a Special Agent with the Department of Homeland Security (hereinafter "Ainsworth").  The Defendant was present.  The Defendant elected not to testify and presented no witnesses.  The

1

Defendant filed a memorandum in support of the motion on August 15, 2022. The State filed a memorandum in opposition to the motion on August 19, 2022.

## Findings of Fact

On July 17, 2020, Stewart received a report that Kaitlyn Guerrette stated that she discovered inappropriate images in her daughter's I-pod (This daughter shall be referred to hereafter as "the child"). The report included information that the child was babysat by the Defendant's ex-partner, Lori-Beth Woodke. Stewart contacted the major crimes division of the Maine State Police and Special Agent Edward Ainsworth of the Department of Homeland Security was assigned to assist with the investigation.

On July 20, 2020, an interview of the child was conducted at the Child Advocacy Center in Fort Fairfield. Both Stewart and Ainsworth observed the interview. The interview included statements by the child that she had sexual interactions with the Defendant.

On July 22, 2020, Stewart and Ainsworth attempted to locate the Defendant in Presque Isle. The Defendant's vehicle was observed in the parking lot of the U.S. Cellular store and the officers recognized his vehicle. They proceeded into the parking lot and waited outside the store for the Defendant to emerge. Sergeant Mark Barnes of the Presque Isle Police Department arrived on scene, as did Officer Chandler Cole of the Washburn Police Department (hereinafter "Cole"). When the Defendant exited the store, Ainsworth approached him and engaged in a conversation. The Defendant was informed that he was free to go and that he was not under arrest. Ainsworth asked the Defendant if he was willing to talk to the officers, to which he calmly responded, "sure." Ainsworth

2

indicated that they wanted to get his side of the story on some allegations that have come up. When the Defendant pressed for more information as to what the allegations were about, Ainsworth was evasive and continued to ask the Defendant to accompany them to the police station to discuss the matters further.

The Defendant agreed to accompany the officers to the Presque Isle Police Department for an interview. The Defendant had to make arrangements for his mother to retrieve the two children that were in his care at that time. The Defendant used Ainsworth cell phone to call his mother and she arrived to pick up the children. Thereafter, the Defendant rode to the Presque Isle Police Department with Officer Cole.

At the Presque Isle Police Department, the Defendant went into the interview room adjacent to the main lobby. The room was approximately 12' by 12' and contained a large table surrounded by six chairs. In the room with the Defendant were Ainsworth, Stewart, and Cole. Ainsworth and Stewart were in street clothes and armed. Cole was in uniform and armed. The Defendant was seated across the table from the three officers, as depicted on Defendant's Exhibit 1. The door was closed, but not locked. The Defendant asks if he was allowed to wait to have his mother join him to talk to, because the situation was very confusing to him. The officers did not address this question and instead let the Defendant know that he has to "know that he is free." Ainsworth read the Defendant the Miranda Rights and the Defendant signed the form agreeing to be interviewed.

At the time of the interview, the Defendant was in his late twenties. He was in good physical health. The interview was convivial in tone. Ainsworth was persistent but

3

spoke in a very calm and courteous manner. The Defendant's comments were also conversational and calm. The Defendant was courteous and polite throughout. There was no indication that the Defendant suffered from any mental health issues, other than a statement made in passing during the parking lot encounter that he has been depressed. The entire interview lasted less than 40 minutes. Nearly every word of dialog from the law enforcement side was uttered by Ainsworth. There were no threats of harm or promises of leniency. However, during the interview Ainsworth told the Defendant that "lying to him [since he is a federal agent] is big boy prison type stuff" and "horrible stuff." Ainsworth also cautioned the Defendant that lying includes "lies of omission," using the example that if he asked the Defendant what officer Cole was wearing, and the Defendant said "a police hat", that would be a "lie of omission" because the rest of the uniform was not mentioned.[1] Ainsworth went on to instruct the Defendant that "when I ask you a question, I need you to be honest" and that "the worst thing you can do right now, is to tell me a lie." These comments were followed by Ainsworth urging the Defendant to be open and honest regarding what happened. Ainsworth did not raise his voice or behave

---

[1] The court notes that in this example, the question was not to as to *everything* that Cole was wearing, and Cole was in fact wearing a police hat. The affirmative statement that Cole was wearing a police hat was truthful. The area of law regarding §1001 prosecutions for omissions has generated significant appellate discussion. To the extent that this topic has proven beguiling for legal scholars, a lay person may well have difficulty with the concept. *See also, Bronston v. United States,* 409 U.S. 352, 359, 93 S. Ct. 595, 600, 34 L. Ed. 2d 568, 574 ("A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner; the state of mind of the witness is relevant only to the extent that it bears on whether "he does not believe [his answer] to be true. . . Precise questioning is imperative as a predicate for the offense of perjury."); Robbins, Ira, *Perjury by Omission, Washington University Law Review,* Vol.97:265, page 282, fn. 135 (Discussing false statements by omission with cases that all deal with concealing information or failures to disclose material information on applications or forms).

4

in any manner that was less than cordial and professional. The Defendant then made several inculpatory statements and described the events that transpired between himself and the minor child.

The second interview of the Defendant occurred on the morning of July 27, 2020, while he was in custody at the Aroostook County Jail in Houlton. This interview was primarily conducted by Ainsworth with Stewart present. The interview was conducted in the jail's visit room with a glass window between Ainsworth and the Defendant. Ainsworth read the Defendant the Miranda warnings and the Defendant agreed to answer his questions. The interview was focused on alleged bail violations as opposed to the underlying allegations. As part of the interview, Ainsworth discusses some things that Ainsworth had agreed to do for the Defendant such as contacting his probation officer, contacting his employer, and releasing property that belongs to the Defendant. The interview was cordial and conversational up to this point in the exchange.

Shortly before concluding the interview, Ainsworth informs the Defendant that if there is a change to his story, it needed to be shared at that time. The Defendant recants part of the confession tendered during the first interview referenced above. The tone of the exchange changes after this claim by the Defendant. Ainsworth becomes frustrated and tells the Defendant to "man up" and "tell the truth." Ainsworth also tells the Defendant that he does not do favors for people who lie to him. Ainsworth pleads with the Defendant to tell the truth. The tone returns to conversational and cordial. Ainsworth recites a recap as what he believes the Defendant previously told him and the Defendant generally confirmed the account as recited. Ainsworth elicits further information about

5

the explicit picture that the Defendant admits was sent to the child. Thereafter, the interview was terminated, and the officers left the jail. The entire interview was less than 32 minutes.

## Voluntariness

The Defendant made clear at the hearing that his sole contention in support of his motion to suppress is that his statements to police, given the overall situation, were not voluntarily made and were not the free choice of a rational mind. The court must "assess voluntariness by examining both internal and external factors to determine whether a defendant's statements are the product of the free choice of a rational mind, and not a product of coercive police conduct; and whether, under all the circumstances, the admission of the statements would be fundamentally fair." *State v. Athayde*, 2022 ME 41, P22, 277 A.3d 387 (Citing, *State v. Dodge*, 2011 ME 47, ¶ 12, 17 A.3d 128). The State must prove voluntariness beyond a reasonable doubt to satisfy the Maine Constitution. *Id. at P27* (Contrasting the standard under the U.S. Constitution of preponderance of the evidence).

In *State v. Dodge*, 2011 ME 47 ¶ 11 and 12, 17 A.3d at 128, the Law Court explained:

This assessment of voluntariness is based on the totality of the circumstances, and includes both external and internal factors, such as:
1. the details of the interrogation;
2. duration of the interrogation;
3. location of the interrogation;
4. whether the interrogation was custodial;
5. the recitation of *Miranda* warnings;
6. the number of officers involved;
7. the persistence of the officers;
8. police trickery;
9. threats, promises or inducements made to the defendant; and
10. the defendant's age, physical and mental health, emotional

6

stability, and conduct.

## FIRST INTERROGATION

The first interrogation took place at the Presque Isle Police Station. The entire interrogation was less than 40 minutes. The Defendant was not in custody and was informed of his right to leave at any time. The Defendant was read the *Miranda* warnings while the waiver form was in front of him. The Defendant signed the form and agreed to speak with the officers. There were three officers involved, but only one officer was conducting the interrogation. The officer was persistent but not aggressive or overbearing. The interrogation techniques utilized by the officer in terms of shifting a portion of the blame to the victim did not amount to trickery. The Defendant was in his late twenties. The Defendant was in good health. The Defendant did reference being depressed, but there was no further evidence to suggest that he suffered from any mental health issues. The Defendant was calm, cool, and collected throughout the encounter.

There were no promises or inducements, however the officer did offer to provide some practical assistance to the Defendant. The court finds the minor offers to assist with notification of the probation officer and things of that nature did not amount to promises or inducements. A confession, otherwise freely and voluntarily made, is not vitiated by an improper inducement unless such inducement was the motivating cause of the confession. *See, State v. Wiley*, 2013 ME 30, P17, 61 A.3d 750, 756 (Quoting, *State v. Tardiff*, 374 A.2d 598, 601 (Me. 1977)). In this matter, the minor offers of assistance clearly were not the motivating cause of the confession.

7

There were no threats of physical harm to the Defendant by the officers. However, the Defendant has identified an issue of concern in terms of the voluntariness of the Defendant's statements during the first interrogation: the threat of federal prosecution and penalties related thereto. The explanation of the law by the officer in discussing a lie by omission could very well been interpreted by the Defendant as a requirement to provide all information, despite the earlier information regarding his right to remain silent. *See, 18 USCS § 1001.* The issue for this court is whether the comment about criminal liability for "lies by omission" mislead the Defendant regarding his constitutional right to remain silent. It is clear that the exaltations to tell the truth and the threats of "big boy prison" and "horrible stuff" were the motivating causes of the confession.[2] In addition, the officer inaccurately characterized the risk of federal prosecution as having more significant or severe penalties than the State matters under investigation. In fact, a § 1001 prosecution carries with it a maximum penalty of 5 years whereas the State charges involved in this matter have a maximum penalty of 30 years. *Id; 17-A M.R.S.A. §253(1)(C); 17-A M.R.S.A. §255-A(1)(F-1); 17-A M.R.S.A. §1604(1)(A).* With that backdrop, the Defendant was told "when I ask you a question, I need you to be honest" and that "the worst thing you can do right now, is to tell me a lie." Also, the timing of this exchange is significant as it was after the *Miranda* warnings which would have added to the difficulty in squaring the right to remain silent with the concept of being prosecuted for a lie by omission, as explained by the officer.

---

[2] Ainsworth noted that the Defendant's inculpatory statement was made "when we finally got you to break down and tell the truth." *Second Interrogation at 20:50.*

8

Standing alone, a simple and accurate cautionary comment about the federal statute regarding making a false statement to a law enforcement officer would not render a defendant's later statement involuntary. However, in this matter the timing of the threats of "big boy prison" and "horrible stuff" combined with the inaccurate contrast of the federal penalties at issue and the State penalties at issue, as well as the clear impact that these circumstances had on the Defendant are such that the court finds that the State has failed to convince the court beyond a reasonable doubt that the statements of the Defendant after 13 minutes and 45 seconds of the police station interview were the product of the free choice of a rational mind, and not a product of coercive police conduct. The Defendant's motion to have those statements suppressed based on lack of voluntariness is **GRANTED**.

## SECOND INTERROGATION

The second interrogation took place several days after the first interrogation and was held at the Aroostook County Jail. The entire interrogation was less than 32 minutes. The Defendant was in custody. The Defendant was read the *Miranda* warnings before any questioning commenced. The Defendant acknowledged his understanding of the *Miranda* warnings. There were two officers involved, but only one officer was conducting the interrogation. The officer was cordial during the initial portions of the interview but later expressed frustration with what he perceived to be Defendant trying to lie to him. Even then, the officer was not overbearing or aggressive with the Defendant. There was no police trickery. The interrogation techniques utilized again by the officer in terms of shifting blame to the victim did not amount to trickery. The Defendant was still in his

9

late twenties. The Defendant was in good health. The Defendant did reference being depressed during the parking lot encounter described above, but there was no further evidence to suggest that he suffered from any mental health issues. The Defendant was calm, cool, and collected throughout the encounter. The Defendant actually took charge of the discussion during points in the interrogation. Again, the officer did offer to provide some practical assistance to the Defendant and then threatened to refuse to help with that assistance if the Defendant lied to him.

In contrast to the first interrogation, there were no threats to the Defendant of "big boy prison," "horrible stuff," or anything of that nature. In addition, the interrogation was after several days for the Defendant to have an opportunity for reflection as well as being preceded by another clear warning that the Defendant did not have to speak to the officer at all, by way of the *Miranda* warnings. The officer repeatedly affirmed that whether the Defendant wished to recant his prior statements was entirely up to him. Frustration and urging the Defendant to be honest is a factor to be considered, but under the circumstances in this case those actions of the officer were entirely permissible. "[N]either a law enforcement officer's 'generalized and vague suggestions that telling the truth will be helpful to a defendant in the long run, nor mere admonitions or exhortations to tell the truth, will factor significantly into the totality of the circumstances analysis.'" *State v. Annis*, 2018 ME 15, P14, 178 A.3d 467, 472, (*Citing, State v. Hunt*, 2016 ME 172, ¶ 23, 151 A.3d 911 (citations omitted) (quotation marks omitted).

10

The Based on the totality of the circumstances, the State has established beyond a reasonable doubt that the Defendant's statements were voluntarily made during the Second Interrogation at the Aroostook County Jail.

The Court must next determine whether this second set of voluntary statements might nonetheless be inadmissible due to the finding regarding the prior statements of the Defendant during the police station interview. As noted by the Law Court in *State v. O'Hara*:

> "A witness's prior involuntary statement does not necessarily preclude the admission into evidence of a subsequent voluntary statement. See United States v. Bayer, 331 U.S. 532, 540-41, 91 L. Ed. 1654, 67 S. Ct. 1394 (1947); Leon v. Wainwright, 734 F.2d 770, 772 (11th Cir. 1984). Rather, the voluntariness of the later statement depends on the "continuing effect" of the coercive practices surrounding the prior statement. Lyons v. Oklahoma, 322 U.S. 596, 602, 88 L. Ed. 1481, 1485, 64 S. Ct. 1208, 1212 (1944). In this regard, the later statement will be held to be voluntary only if there is a "break in the stream of events . . . sufficient to insulate the statement from the effect of all that went before." Clewis v. Texas, 386 U.S. 707, 710, 18 L. Ed. 2d 423, 427, 87 S. Ct. 1338, 1340 (1967). Factors bearing on whether the coercion surrounding an earlier statement has carried over to a later statement include the amount of time that elapsed between the statement; a change in the place of interrogation, and a change in the identity of the interrogator. See, e.g., Bayer, 331 U.S. at 540-41; Lyons, 322 U.S. at 604; Leon, 734 F.2d at 773; Remeta v. State, 300 Ark. 92, 777 S.W.2d 833, 837 (1989)."

*State v. O'Hara*, 627 A.2d 1001, 1004 (Me. 1993).

Although this situation involved the same interrogator, there were no uniformed officers present. The primary impetus to engaged in discussions with the Defendant on both occasions was the statement of the child during the advocacy center interview. There was significant time between the two interrogations. There was a change in location of interrogation. The Defendant was informed at the outset of his right to decline to speak to the officers. In addition, as noted above the officer repeatedly made clear that

11

it was entirely up to him to decide regarding providing any statements. This combined with the demeanor of the Defendant in taking command of the conversation at times and the lack of the coercive conduct reflect that the statements were sufficiently insulated and free from the coercive effect that polluted the statements during a portion of the police station interview.

The Based on the totality of the circumstances, the State has established beyond a reasonable doubt that the Defendant's statements at the Aroostook County Jail were voluntarily made, free from the coercive impact of the conduct during the police station interview. The Defendant's motion to have the statements from the Aroostook County Jail interrogation suppressed based on a lack of voluntariness is **DENIED**.

The entry shall be:

For the foregoing reasons, the Defendant's Motion to Suppress is **GRANTED** as to all statements of the Defendant from after 13 minutes and 45 seconds of the First Interrogation (police station interview) to the conclusion of that interview. The State shall be prohibited from entering any statement of the Defendant from 13 minutes and 45 seconds of the First Interrogation to the conclusion of that interview for any purpose.

For the foregoing reasons, the Defendant's Motion to Suppress is **DENIED** as to all statements of the Defendant from the Second Interrogation (jail interview).

Dated: September 8, 2022

_____
Justice, Maine Superior Court

12