STATE OF MAINE                    UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss                    DOCKET NO CR-2021-1330

STATE OF MAINE          )
                       )
                       )          ORDER ON DEFENDANT'S
        v.             )          MOTION TO SUPRESS
                       )
                       )
PETER GLEN WING        )

        This matter came before the court on August 29, 2022 for hearing
on Defendant's motion to suppress. Defendant was present and was
represented by Attorney Seth Berner, Esquire.  The State was
represented by Assistant District Attorney Michael Madigan.

        Defendant challenges whether or not the Defendant's statements
were voluntary, asserting that the Defendant's statements were not made
with free choice of a rational mind.  Defendant specifically challenges
whether or not the statement was obtained in violation of Defendant's
federal and state rights under *Miranda v. Arizona*, 348 U.S. 436 (1966)
and its progeny and whether any statements were voluntarily made.  The
statements in question were made by Defendant on September 11, 2021.
The court heard testimony from Investigator Edward H. Hastings of the
Maine State Fire Marshall's office as well as the Defendant, Peter Wing..
The court also received in evidence Exhibit 1, an audio recording of the
interview between law enforcement and Defendant on September 11,
2021.

        After hearing, the court reviewed Exhibit 1 in its entirety.  Having
now considered all of the evidence, arguments presented, and observing
the content of the recorded interview, the court makes the following
Findings of Fact and Conclusions of Law upon which the Order set forth
below is based.

                            **BACKGROUND**

        Edward Hastings has been employed by the State of Maine since
June 2021 as an investigator for the State Fire Marshall's office.  He
previously worked for the State Fire Marshall's office from 2008 to 2012.
He has previously worked as a law enforcement officer, employed by the
Town of Farmington beginning in 2004 to 2008 and again in 2012 when
he returned to the Farmington Police Department as a patrol sergeant.
In addition to his law enforcement and investigative jobs, Investigator
Hastings has been a fire fighter for 26 years, including serving as Fire
Chief in the Town of Livermore Falls prior to his present employment.
Investigator Hastings has received extensive training relating to origins

1

and causes of fires, and in July of 2022 he became a certified fire investigator through the International Association of Arson Investigator (IAAI). He is also a graduate of the Maine Criminal Justice Academy and has received training in OUI investigation and is a certified drug recognition expert and instructor.

On September 11, 2021, Investigator Hasting was sent to the area of 41 State Street in August to investigate a suspicious fire. He arrived between 8:00 and 8:30 pm. Members of the Augusta Police Department and the Augusta Fire Department were still at the scene when he arrived. Investigator Hasting gathered background information from the officers and firefighters on scene about their observations prior to his arrival.

The location of 41 State Street is an apartment building with a garage directly next to the building. The fire was in the garage. Many of the tenants from 41 State Street were outside of the building when Investigator Hastings arrived. One tenant, later identified as the Defendant, Peter Wing, initially remained in the apartment building. Officers informed Investigator Hastings that prior to his arrival, Defendant had been loud and obnoxious, yelling from a second-floor balcony down to the firefighters dealing with the garage fire, and he had been instructed to quiet down. Once Investigator Hastings was on scene, he could still hear Defendant yelling from inside the apartment building. As the investigators were conducting their work with respect to the fire, Investigator Hastings (and other members of law enforcement) observed Defendant hold a gun up in the window, resting it on the windowsill. Defendant did not point the gun at anyone, but rather "stuck it up in the window" where the officers could see the gun's silhouette. Investigators could also see Defendant walking around in his apartment on the second floor.

After the investigators had been on scene for a couple of hours, Defendant exited the building through an enclosed stairwell from the second floor. As he exited the building, Defendant was approached by Officer Guptil of the Augusta Police Department. As the officer approached him, Defendant attempted to return to the building, but the officer detained Defendant at this point. Although it was not expected or planned to speak with Defendant at this point, Investigator Hastings made the determination to interview Defendant once he exited the building.

The interview took place at the entrance to the enclosed stairway to Defendant's apartment. Officer Guptill was also present he did not participate in the interview conducted by Investigator Hastings. The officer was dressed in his police uniform and Investigator Hastings was

dressed in "plain clothes attire."[1] Investigator Hastings had his firearm on as well. It was very dark in the area of the interview. Defendant was not handcuffed or physically restrained during the time that Investigator Hastings was interviewing Defendant.

Initially upon making contact with Defendant, Investigator Hastings can be heard instructing Defendant to "sit right on those steps." After a few short questions asking Defendant if he had ever been in trouble before, and when, Investigator Hastings informs Defendant that he works with the Fire Marshall's office and that even though he is a fire marshal, he is a "cop." Defendant then asks, "can I have your badge number and can I see a badge?" The officer answers yes and shows Defendant his badge. The investigator then asks if that is official enough to which Defendant responds, "yes sir."

Investigator Hastings read Defendant the *Miranda* warning from the inside cover of his fire marshal issued notebook. Defendant answered "yes sir" or "yup" to each of the four questions. When asked the second question, if he understood that that anything that he said could be used against him in a court of law, Defendant responded "I know my *Miranda* rights. Yes sir, I've been arrested that many times I know of." When asked if he wished to answer questions, he stated yup, and then asked if he could go home. Defendant was very concerned about his apartment being unlocked stating, "well I need to lock up my place, if you're going to put me in jail." At no point did Defendant inform the investigator that he did not wish to answer any questions.

Investigator Hastings could tell that Defendant had been drinking. He could smell alcohol coming from Defendant and his speech was slurred. Additionally, prior to interacting with Defendant, Investigator Hastings had been informed by the fire chief that Defendant was an alcoholic, and that he was intoxicated. Defendant's presentation with Investigator Hastings was consistent with that information that night. During the course of the interview, Defendant was able to sit without falling or having any physical difficulties. Defendant was not physically ill at any point.

Defendant asserted at the motion to suppress that he was unaware that he was speaking to a law enforcement officer. This is contrary to the exchange between himself and Investigator Hastings. Defendant specifically asked if he could see the investigators badge, which the investigator obliged. When asked if the badge was "official enough" Defendant stated "yes sir." Defendant also asserted that he was so

---

[1] The investigator could not recall if he was wearing a polo type shirt or a collared dress shirt without a tie.

intoxicated that he was unable to complete the booking process at the Kennebec County Jail. Although there was insufficient evidence as to what happened during the entire booking process, the initiation of the booking process is heard at the end of Exhibit 1, where the officers are speaking to Defendant, and he is responding to their questions.

Defendant's answer to the investigator's question were responsive and consistent with the topic of the interview. Defendant's demeanor during the interview was sometimes calm and sometimes agitated, especially when speaking about his landlord. Defendant's statements were also consistent with the information that the investigator had learned from the scene that night. The interview lasted approximately 23 minutes.[2]

"The State bears the burden to prove that a confession was voluntary beyond a reasonable doubt – a more protective standard of proof than the federal counterpart of a preponderance of the evidence." *State v. Annis*, 2018 ME 15, ¶13, citations omitted. "A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *Id..* See also *State v. Seamon, 2017 ME 123, ¶18.*

"The voluntariness requirement encompasses 'three overlapping but conceptually distinct values: (1) it discourages objectionable police practices; (2) it protects the mental freedom of the individual; and (3) it preserves a quality of fundamental fairness in the criminal justice system." *State v. Seamon, 2017 ME 123, ¶18.* In order to determine the voluntariness of a confession, a court looks at the totality of circumstances, *State v. Sawyer*, 2001 ME 88, ¶7, 772 A.2d 1173, as well as a number internal and external factors: the specific details of the interrogation, the duration and location of the interrogation, whether or not it was custodial, whether *Miranda* was given, the number of officers involved, the persistence of the officers, whether or not any police trickery, threats, promises or inducements were made, as well as the particular defendant's age, physical and mental health, emotional stability and conduct. *Seamon*, 2017 ME 123, ¶18, *see also State v. Dodge* 2011 ME 47, ¶¶ 11-12, 17 A.3d 128, 132.

---

[2] The entire recording is 43 minutes and 15 seconds long, with the first 23 minutes consisting of the interview. At that point, Investigator Hastings places Defendant under arrest and then transports him to the county jail. The recording ends with the booking officers taking over at the facility. (*See* Motion Exhibit 1.)

4

The court finds that Defendant is of reasonable intelligence. Defendant was responsive to the questions asked, he was able to carry on a conversation with the investigator, and he gave appropriate explanations to questions and statements throughout. The court finds that Defendant was in custody when Investigator Hastings interviewed him and as such, the investigator informed Defendant of his rights pursuant to *Miranda v. Arizona*, 348 U.S. 436 (1966) and its progeny. Investigator Hastings read Defendant his *Miranda* rights out loud from the printed *Miranda* warning on his police issue notebook. A review of the colloquy between Investigator Hastings and Defendant demonstrates that the warnings were thoroughly administered, and the Defendant is clearly heard stating that he understood his rights and then answered that he wished to answer questions. The tone of the interview was conversational at all times, albeit at points the investigator was direct in his statements regarding Defendant's involvement in setting the fire. The investigator did not use any form of trickery, threats, promises or inducements in order to persuade Defendant to talk to him. At no point during the interview, did Defendant ask or attempt to stop the interview.

"A person under the influence of alcohol is not necessarily incapable of waiving his constitutional rights or giving a voluntary statement, if despite the degree of intoxication he is aware and capable of comprehending and communicating with coherence and rationality." *State v. Finson*, 447 A.2d 788, 792 (Me. 1982). (quotations and citations omitted.). See also *State v Clark*, 475 A.2d 418, 421-422 (Me. 1984).

The court finds that the State has proven beyond a reasonable doubt that the statements made by Defendant to Investigator Hastings were voluntary beyond a reasonable doubt and a product of his exercise of free will and with a rational intellect. Based on the evidence presented in the suppression hearing, as well as the arguments of counsel, Defendant's Motion to Suppress as to the September 11, 2021 interview is DENIED.

Dated: November 22, 2022

Deborah P. Cashman, Justice
Unified Criminal Docket